E. H. LOTT ET AL. v. HENRIETTA M. KING.

No. 2736.

1. **Depositions—Practice.**—Where objections are urged against a number of questions and answers thereto, and a part of the interrogatories are not obnoxious to the objections, it is error to suppress all the testimony so objected to. See example.

2. **Leading Questions to Witness.**—A statement in an interrogatory which merely calls the attention of the witness to the subject matter of the inquiry is no ground for suppressing the answer. Whether a question is leading depends upon the determination of the inquiry whether it suggests any particular answer. See examples.

3. **Depositions Irrelevant.**—Objections to depositions for irrelevancy should be urged when the testimony is offered, and not by motion to suppress.

4. **Archives of County Clerk's Office.**—An order or letter from the grantee of a land certificate directed to the clerk of the county land board, and dated February 25, 1838, directing the clerk as to the disposition to be made of the certificate when issued, is not an archive of the county clerk's office, and a certified copy given by such officer is not competent evidence.

5. **Evidence Relevant and Competent.**—In a contention between heirs of an assignee of a headright certificate and a purchaser claiming under a duplicate of the certificate obtained and located in name of the original grantee, it was error to exclude the original certificate issued to the assignee, as well as a Land Office copy of the report of the traveling Board of Land Commissioners so far as it tended to show the circumstances of the approval of the certificate.

6. **Proceedings, etc., of County Land Boards.**—Bracken v. Wells, 3 Texas, 88 adhered to as to the construction of article 1875, Hartley's Digest, and the practice of the county boards under the act.

7. **Fact Case.**—See facts held sufficient to show that an original land certificate produced was that passed upon and approved by the traveling board, notwithstanding discrepancies in dates, etc.

8. **Irrelevant Testimony.**—In the contention as in paragraph 5 above the affidavit made to procure the duplicate is irrelevant to any issue in the case.

APPEAL from Nueces. Tried below before Hon. J. C. Russell.

The opinion contains a sufficient statement of the case.

*E. H. Lott* and *D. W. Doom,* for appellants.—1. The direct interrogatories excepted to by defendant were not leading in form, and the answers thereto were competent, relevant, and pertinent to the issue joined between the parties. [See opinion.] Able v. Sparks, 6 Texas, 349; Long v. Steiger, 8 Texas, 461; 1 Greenl. Ev., secs. 434, 435.

2. The court erred in sustaining defendant's objections to the introduction in evidence by plaintiffs, as a muniment in their chain of title, of a certified copy of the order of John B. Bulrese to Joseph P. Pulsifer, clerk of the Board of Land Commissioners of Jefferson County, Texas, dated February 25, 1838, to deliver the headright certificate of the said John B. Bulrese for one league of land to Nathan Halbert in his own name, as the purchaser thereof, and in excluding said document from the jury, because the said order being a part of the record of the Board of Land Commissioners of Jefferson County, Texas, which issued the original headright land certificate of John B. Bulrese, a certified copy thereof was admissible in evidence to show title in Nathan Halbert and to show a confirmation of the bond for title from John B. Bulrese to Nathan Halbert, which had already been read in evidence. Act Dec. 14, 1837, Hart. Dig., arts. 1847, 1848, 1851, 1852; Act Jan. 26, 1839, Hart. Dig., arts. 1929, 1933, 2192; Rev. Stats., art. 2252; Burkett v. Scarborough, 59 Texas, 495; McDaniel v. Weiss, 53 Texas, 257; Winters v. Laird, 27 Texas, 616; Guilford v. Love, 49 Texas, 715; Townsend v. Munger, 9 Texas, 300.

The certificate offered in evidence purported to be and was the act of

the officers of the government and proved its own execution. The Board of Land Commissioners was a court of competent jurisdiction to pass upon the genuineness of the claim and of the right of the assignee to the certificate, and its judgment was conclusive on both questions, subject to the approval of the traveling board as to the genuineness of the claim, but not as to the rights of the assignee. The fact that the certificate was for one league of land only is explained in the certificate itself, which shows that a certificate of same number and date was issued for the labor, and the discrepancy between the date of the certificate (the 3d of March, 1838) and the date of it recited in the report of the traveling board and in the duplicate certificate which followed the report (January 22, 1838) was immaterial, and at most raised only a question of identity which was subject to explanation, and was a question of fact that ought to have been submitted to the jury. Hart. Dig., arts. 1847, 1848, 1851, 1852; Act Jan. 29, 1840, Hart. Dig., arts. 1946–1959; Act Feb. 3, 1845, Hart. Dig., arts. 2143, 2144; Rev. Stats., arts. 2252, 3885; Cannon v. Cannon, 66 Texas, 682; Holmes v. Anderson, 59 Texas, 481; Etter v. Dugan, 1 Posey's U. C., 176; Burkett v. Scarborough, 59 Texas, 495; Merriweather v. Kennard, 41 Texas, 273; McPhail v. Burris, 42 Texas, 142; Keyes v. Railway, 50 Texas, 173; Johnson v. Newman, 43 Texas, 628; Thomson v. Hines, 59 Texas, 525; League v. Rogan, 59 Texas, 427; Himmelman v. Hoadley, 44 Cal., 214; Ede v. Johnson, 15 Cal., 53; 1 Greenl. on Ev., sec. 6.

On variance and identity. Pleasants v. Dunkin, 47 Texas, 344; Mason v. McLaughlin, 16 Texas, 24.

4. The thirty-ninth section of the Act of December 14, 1837, provided that the boards of land commissioners should go into operation on the first Thursday in February, 1838, but that they should be allowed to commence receiving applications for lands and hearing testimony on the first Thursday of January, 1838, and this of itself explains the discrepancy between the date of the certificate and the date recited by the traveling board. The case was no doubt heard and determined as to the validity of the claim of one league and labor on the 22d day of January, 1838, and a record made of it, while the actual issuance of the certificates, one to the purchaser and the other to the original grantee, occurred on the 3d of March, 1838, and the traveling board in their investigations saw only the record and passed only on the validity of the claim, while the certificates themselves were in the hands of the owners and were not seen by that board. Hart. Dig., art. 1875; Bracken v. Wells, 3 Texas, 88.

5. The court erred in sustaining the defendant's objections to the introduction in evidence by plaintiffs of each of the following documents, viz.: Certificate of the Commissioner of the General Land Office, dated May 17, 1853; certified copy of the original headright certificate No. 38, dated 3d of March, 1838, issued to Absolem Jett for one league of land by the Board of Land Commissioners of Jefferson County, Texas, with

all endorsements and certificates thereon; certified copy of the original headright certificate, dated on the 3d of March, 1838, issued to William McFaddin for one league of land by the Board of Land Commissioners of Jefferson County, Texas, with all endorsements and certificates thereon; certified copy of the original headright certificate No. 19, dated on the 3d day of March, 1838, issued to William McFaddin for one labor of land by the Board of Land Commissioners of Jefferson County, Texas, with all endorsements and certificates thereon; and in excluding each of said documents from the jury. Pleasants v. Duncan, 47 Texas, 344; Mason v. McLaughlin, 16 Texas, 24.

*Wells, Stayton & Kleberg,* and *Hume & Kleberg,* for appellee.— 1. A leading interrogatory is one which may be answered in the affirmative or negative, or one which suggests to the witness the response he is desired to make. Mathis v. Buford, 17 Texas, 152; Trammell v. McDade, 29 Texas, 360.

2. Said interrogatories are incompetent and irrelevant and are not confined to the point at issue. Rev. Stats., arts. 4795–4800; 1 Greenl. Ev., sec. 51.

3. The document offered was in the nature of a letter, and does not purport to be a muniment of title. It is not such an instrument as the law authorizes to be filed or recorded in any public office; it is not proven for record, was in fact never recorded in a public office in this State, and its execution and delivery are not established by any competent proof. · Its deposit in the office of the county clerk of Jefferson County is no notice to any one claiming adversely thereto from the original grantee or his heirs, and it was properly excluded by the court, being also objectionable because irrelevant to the cause at bar.

4. What appellants call the original certificate No. 39 was properly excluded by the court, because it is not a valid certificate and in no way connects appellants with the land in controversy. McKinney v. Brown, 51 Texas, 96; Miller v. Brownson, 50 Texas, 583.

GAINES, ASSOCIATE JUSTICE.—This was an action of trespass to try title, brought to recover a league and labor of land patented to John B. Bulrese upon duplicate certificate No. $\frac{35}{216}$, issued by the Commissioner of the General Land Office in lieu of original certificate No. 39, issued by the Board of Land Commissioners of Jefferson County upon Bulrese's headright. Richard King was the original defendant, but he died during the progress of the suit and appellee became the party defendant in his stead.

As we understand from their abstract of title and the evidence offered, the plaintiffs claimed under the heirs of one Nathan Halbert, that Bulrese sold his headright to Halbert before the certificate was issued, and that the original certificate No. 39 was in fact issued to Halbert for one

league of land.    The defendant claimed under Bulrese through an alleged conveyance of the certificate by Mary C. Halbert as his sole heir.

The plaintiff took the deposition of Mary C. Halbert, and upon a written motion by defendant certain of her answers were suppressed.    There were three grounds of the motion, one of which was waived.    The grounds insisted upon were as follows:

"1.    Because the second, third, fourth, sixth, tenth, eleventh, twelfth, thirteenth, and fourteenth direct interrogatories were each of them leading, irrelevant, and incompetent.

"2.    Because the answers to the said direct interrogatories and each of them were incompetent, irrelevant, and impertinent, and were in substance what the said direct interrogatories suggested to the witness."

The direct interrogatories and the answers thereto excepted to by defendant were as follows:

"Interrogatory No. 2.    This is a suit in trespass to try title to recover one league and one labor of land situated in Nueces County, Texas, and patented to John B. Bulrese on the 7th day of August, 1882, by virtue of duplicate headright certificate No. $\frac{35}{216}$, issued in lieu of original headright certificate No. 39.    The original certificate was issued by the Board of Land Commissioners of Jefferson County in 1838.    Were you ever acquainted with (said) John B. Bulrese?    And if yea, when and where did you know him, and for how long did you know him?    Is he dead or alive?    If you say that he is dead, when and where did he die?    Are you related to said John B. Bulrese in any way?    If so, how?    If you answer that said John B. Bulrese is dead, and that you are a daughter of said John B. Bulrese, now please state whether or not the said Bulrese left any other children surviving him, and if any, how many; and give their names; and if any of them are girls, were they ever married; and if yes, give the names of their husbands.    And are any of the said children of said Bulrese dead?    If yea, how many of them are dead, and what were their names, and when and where did they die?    If you say that some of the children of said Bulrese are dead, did they leave any children or other descendants surviving them? and if so, which of them? and give their names.

"Answer.    I was acquainted with the said John B. Bulrese.    I knew him in the States of Louisiana and Texas, and knew him as far back as I can recollect.    The said John B. Bulrese is dead.    He died somewhere on Grand River in the State of Louisiana.    I am related to said John B. Bulrese.    He was my father.    Yes, the said John B. Bulrese left five children surviving him at his death besides myself, as follows, viz.:   John Bartya Bulrese, John C. Bulrese, Madaline Clara Bulrese, Mary Clarisa Bulrese, John Alfred Bulrese, and myself, Mary Clementine Bulrese.    Yes, the girls were all married.    Madaline Clara Bulrose married a Mr. Jos. Christina, Mary Clarisa Bulrese married Batease (or Batist) Jedra, and I married Nathan Halbert.    All of the children of said John B. Bulrese

except myself are now dead. Their names are as stated above. I don't know at what point or place they died, but somewhere in the State of Louisiana. My brother John C. Bulrese and my oldest sister, Madaline Clara Christina, left some four or five children surviving them, I think, but I don't know whether my other brother and sister left any children surviving them or not. I don't know the names of the surviving children.

"Interrogatory 3. Where do the children or the descendants of said John B. Bulrese now reside, if you know? And if you don't know, please state where they lived the last you knew of them, and give the date of their said residence.

"Answer. I don't know where the children or the descendants of the said John B. Bulrese now reside. Some of them did reside at Franklin, in St. Mary's Parish, in the State of Louisiana, and some at Plaquemine, Louisiana, the last time I knew where they lived. I don't recollect the date of their said residence, but it was something like thirty years ago.

"Interrogatory 4. The original land certificate No. 39, issued by the Board of Land Commissioners of Jefferson County to John B. Bulrese for one league of land, recites that he had received the certificate for the labor and that he had sold the league to Nathan Halbert. On February 22, 1837, he, said John B. Bulrese, executed to Nathan Halbert a bond for title by which he bound himself to make title to Nathan Halbert to all of his headright, whether it be for a league and labor or for a third of a league, being the land for which he was entitled as a citizen of Texas before the day of the declaration of independence. Now, were you ever acquainted with said Nathan Halbert? If yea, were you related to him in any way, and if yea, how? Is said Nathan Halbert dead or alive? If you say he is dead, when and where did he die?

"Answer. I was acquainted with the said Nathan Halbert, and I was related to him. I was his wife. The said Nathan Halbert is dead; he died near Eagle Springs, in Coryell County, Texas, about the year 1867.

"Interrogatory 6. If you have answered that you are a daughter of John B. Bulrese and the surviving wife of said Nathan Halbert, you will please state where you were living in February, 1837, and where was the said John B. Bulrese living, and were you or were you not at that time the wife of Nathan Halbert? If you answer that you were living on Adams Bayou, in Jefferson County, Texas, and that John B. Bulrese was living with you at the time, you will please state what you did with the place you were living on. Whom did you leave in possession of the place when you left there? If you say that your husband, Nathan Halbert, sold the place to your father, the said John B. Bulrese, you will please state whether or not you were present when the trade was made. If you say you were present, what, if anything, did your father, the said Bulrese, give your husband for the place? Please state fully all that you may know of the transaction.

"Answer.   In February, 1837, I was living on Adams Bayou, in Jefferson County, Texas.   The said John B. Bulrese was living at my house with me.   I was at that time the wife of Nathan Halbert.   Nathan Halbert sold it to my father, John B. Bulrese.   We left said John B. Bulrese and a Mr. Carothers in possession of the place.   I was present when the trade between Nathan Halbert and John B. Bulrese was made in which Nathan Halbert sold to said John B. Bulrese the place we were then living upon.   My father, said John B. Bulrese, give my husband, said Nathan Halbert, his headright land certificate for the place we were then living upon, referred to in above trade.   I know nothing further about the transaction than that my husband sold to my father the place we were living upon for the headright land certificate of my father, and that we moved off the place and gave it up to my father, the said Bulrese.

" Interrogatory 10.   If you state that you were acquainted with Barnes Parker, now please state whether or not you ever sold and conveyed the headright certificate of John B. Bulrese for one league and one labor of land to said Barnes Parker.

"Answer.   I never did.

" Interrogatory 11.   If in answer to interrogatory 10 you say you never sold or conveyed the John B. Bulrese certificate for one league and one labor of land, now state whether or not you ever signed a deed or transfer of said certificate to said Barnes Parker.

"Answer.   I did not.

"Interrogatory 12.   Please state whether or not you ever authorized any person to sign your name to a deed or transfer of said certificate to said Barnes Parker.

"Answer.   I never did authorize any one to sign my name to a deed or transfer to the said certificate of said John B. Bulrese to Barnes Parker.

" Interrogatory 13.   Please state whether or not you ever had any business transaction with said Barnes Parker, in which he paid you the sum of $500.

"Answer.   I never did have any business transaction with said Barnes Parker in which he paid me $500 or any other sum of money.

"Interrogatory 14.   If in answer to the preceding interrogatories you have stated that you never sold or transferred the J. B. Bulrese headright certificate to Barnes Parker, state if you ever had any transaction with said Parker in which he paid you money.   If so, when, where, and what was it; and how much did he pay you, and what kind of money did he pay you?

"Answer.   I have answered this interrogatory in preceding interrogatory No. 13, to which I refer you for my answer to this."

The motion to suppress these answers was sustained and the plaintiffs excepted.   The ruling of the court upon the motion is assigned as error.

In Neyland v. Bendy, 69 Texas, 713, in determining the correctness of a ruling upon a similar motion, this language is used:   "A number of

questions were propounded to this witness, the most of which were not leading, though some were.    The objection was to the interrogatories as a whole.    We are of the opinion that the motion should have pointed out the particular interrogatories considered leading.    This not having been done, it did not become the duty of the court to search through the record to determine which were leading, and there was no error in refusing to suppress."   We take it that the converse of the proposition is true, that the court should not suppress all the answers in such a case if any of the interrogatories be not subject to the objection.

If the preliminary statements contained in interrogatories 2 and 4 respectively had suggested the answers to such interrogatories, it would have been proper to suppress them and to exclude all others which were not intelligible, without reference to the answers so suppressed.    The statement preceding the questions in the second interrogatory is very general, and it is clear that it does not suggest the desired answer to the question, and we think the same may be said of the fourth.

The statement of the facts that the certificate recited that Bulrese had sold the league to Halbert and that Bulrese had made a bond for title to Halbert for his right to land does not suggest any particular answer as to questions concerning the relationship of the witness to Halbert or the fact of his being dead or alive.

These statements were unnecessary, but we are of opinion that a statement in an interrogatory which merely calls the attention of the witness to the subject matter of the inquiry is no ground for suppressing the answer.    Long v. Steiger, 8 Texas, 460.

We are further of the opinion that the tenth interrogatory is not leading.    It does not properly admit of an answer "yes" or "no," and we are not aware of any decision which holds that a question is leading merely because it is put in the form "did or did not."    Whether a question in that or a similar form be leading or not depends upon the determination of the inquiry whether it suggests any particular answer; and we think questions in that form which have been held leading are not such as inquire into a single fact, but such as enable the witness to state in two words, such as "he did" or "he did not," a series or group of facts.    Such is the case of Tinsley v. Carey, 26 Texas, 350.    The question there evidently suggested to the witness that it was desired to prove that about January, 1857, Tinsley got money from the sheriff of Bastrop County, and that he was first to satisfy a judgment in favor of a certain person and then to apply the balance upon other debts.

That these were the facts desired to be proved is indicated by the questions held leading in that case.    But as to the question now under consideration, we think it would puzzle the astutest lawyer who is uninformed as to the issues in the case to determine from the question alone whether the examiner desired to prove that the witness had or had not transferred

the certificate. In like manner the other interrogatories objected to we think legal, except the thirteenth, which with some hesitation we hold to be leading.

As to the ground that the answers are irrelevant, it seems to us that such an objection should be urged when the testimony is offered and not by a motion to suppress. However, if all the answers appeared irrelevant, we should hold the error in suppressing them harmless. But many of them were material to the issues made upon the trial.

The plaintiffs introduced during the course of the trial a copy of the following order, duly certified by the clerk of the County Court of Jefferson County:

"Joseph P. Pulsifer, Esq., clerk of the Board of Land Commissioners of the County of Jefferson, will please to deliver to Nathan Halbert my certificate for one league of land as the purchaser and owner of the same by a sale made by me to the said Halbert on the 22d day of February, 1837, which was duly made and is hereby sanctioned and acknowledged by me; you will also deliver to him, the said Halbert, my certificate for the labor in my own name, as I have not disposed of it, but the said Halbert is to locate it for me and in my own name. Your compliance will much oblige.

his<br>JOHN B. X BULRESE.<br>mark.

"February 25, 1838.

"Test:   J. H. GANER,   } JOHN B. BULRESE. . Order."
         "PAYTON BLAND.  }

The court, upon objection by the defendant, excluded the copy, and in this ruling there was no error. The original was probably the evidence upon which the board acted in issuing a certificate for a league of land to Nathan Halbert. But we know of no law which required the preservation of the evidence upon which the board acted in granting land, or which makes such a document an archive of the county clerk's office. It is not a contract, and there is no pretence that it was ever recorded as such. The original, if properly proved, would be relevant and material evidence.

But in our opinion there was error in excluding from the jury the certificate No. 39 to one league of the land to which Bulrese was entitled, together with the extracts from the report of the traveling board showing that certificate No. 39 issued to John B. Bulrese had been recommended. Defendant claimed that the certificate offered was not the certificate which the traveling board recommended. The certificate is as follows:

"No. Thirty-Nine.

"This is to certify, that John B. Bulrese has appeared before us, the Board of Land Commissioners for the County of Jefferson, and proved according to law that he arrived in this country in one thousand eight

hundred and thirty-four, and that he is a married man and entitled to one league of land, which he has sold to Nathan Halbert, there having been granted to him a certificate corresponding with this in number, name, and date for the labor which the law entitles him in addition to the league, upon the condition of paying at the rate of three dollars $\frac{50}{100}$ for every labor of irrigable land, two dollars $\frac{50}{100}$ for every labor of temporal or arable land, one dollar and $\frac{20}{100}$ for every labor of pasture land which may be contained in the survey secured to him by this certificate.

"Given under our hands this third day of March, 1838.

"CLAIBORNE WEST, Pres't.

"HEZEKEAH WILLIAMS,

"Assisting Commissioner.

"Attest: JOSEPH P. PULSIFER, Clerk."

The following is an extract from the report of the traveling board:

"*Statement Showing the Number of First Class Certificates issued in the County of Jefferson.*

| No. of Certificate. | Name of Applicant. | Date of Certificate. | Leagues of Land. | Labors of Land. | Thirds of Leagues. | Augmentation L'gs & Labors. | Augmentation 3rds of L'gs. | Remarks. |
|---|---|---|---|---|---|---|---|---|
| ** | *    * | *    * | * | ° * | * | * | * | *    * |
| 38 | Absolem Jett. | Jan. 22, 1838. | 1 | 1 | | | | |
| 39 | John B. Bulrese. | "      " | 1 | 1 | | | | |
| 40 | John Carothers. | "      " | 1 | 1 | | | | |
| ** | *    * | *    * | * | * | * | * | * | *    * |

"*Republic.*

"We, the undersigned members of the Investigating Board of Land Commissioners appointed by Congress to investigate the records of the different boards of land commissioners east of the Brazos River, do hereby certify that we have investigated the above and foregoing claims and find the same to be genuine and legal claims against the government, and recommend the same to the Commissioner of the General Land Office for patents.

"Given under our hands, in the town of Beaumont, this 22nd day of May, A. D. 1841.

"JOS. GRIGSBY,

"H. B. LITTLEFIELD,

"JOS. PINBORTH,

"NATHAN HALBERT,

"H. L. WILLIAMS,

"ROBT. W. SMITH.

"Attest:   ALEXANDER CALORY, Clerk C. C. J. Co."

There is a discrepancy between the certificate offered and that recommended, as shown by the above report. The certificate offered bears date

March 3, 1838; the date of the certificate recommended is given as January 22, 1838; the certificate is but for one league, whereas the certificate recommended was for one league and one labor. In connection with the certificate and report, and in explanation of the discrepancies, the plaintiffs also offered certificate No. 38, issued to Absolem Jett, and certificate No. 40, issued to John Carothers, both of which bore date March 3, 1838. We think all this evidence should have been admitted. The provision of the statute which established boards of land commissioners is peculiar. The thirty-ninth section provided "that the several land offices contemplated and established by this act shall commence and go into operation on the first Thursday in February next; * * and the several boards shall be permitted and allowed to commence receiving applications for lands and hearing testimony on the first Thursday in January next." Hart. Dig., art. 1875.

In Bracken v. Wells, 3 Texas, 88, Chief Justice Hemphill uses this language: "An objection is taken to the want of power in the commissioners to issue the certificate before the first Thursday in February, 1838. In this construction, could the question be regarded as an open one, I feel inclined to concur with the appellant. The obvious meaning of the law is that the commissioners should before that time restrict their authority to the receiving of applications and hearing testimony in their support. But the practical construction is understood to have been otherwise, and these certificates have been recommended for patent by the officers appointed to examine the validity of claims on the government. The safe ground to assume would perhaps be found in considering all certificates issued before the first Thursday in February as bearing date on that day, and this would not permit them to have any undue preference over certificates issued in conformity with a correct construction of the statute."

Our conclusion from an examination of all the testimony offered is that the board who issued the certificate in controversy construed and acted upon the statute in conformity with the opinion above expressed. They may have received the application and heard the testimony in January, and when they found the evidence satisfactory they then made a record of the fact. They, however, withheld the certificates until after the first Thursday in February.

It is to be presumed, we think, that when the traveling board came to examine into the genuineness of the certificates issued they acted upon the record, and that in giving the dates of these they gave the date of the record instead of the date which the certificates actually bore on their face. We know of no other manner of accounting for the fact that three successive certificates, numbered respectively 38, 39, and 40, are dated March 3, 1838, and are reported as of the date of the 22d day of the previous January. It is not to be presumed that the commissioners issued two certificates to each of these claimants upon the same right. There is nothing to show who made the application for the Bulrese certificate, but

whether it was made by Bulrese or Halbert, it is probable that in January the question only of Bulrese's original right was passed upon, it not being necessary to determine the question of the assignment until the time came to issue the certificate. It is also to be presumed that before the issue of the certificate the commissioners heard evidence as to a transfer from Bulrese to Halbert, and, as they were empowered to do, determined that the latter was entitled to one league of the league and labor to be granted, and issued the certificate offered in evidence by plaintiffs accordingly.

It has been held that rights such as Bulrese's were assignable in part, and we see no reason why the board after determining the facts could not issue the certificate or certificates in accordance with the fact of the transfer. Babb v. Carroll, 21 Texas, 765.

It follows that in our opinion the evidence offered and excluded tended strongly to show, and in the absence of countervailing evidence was sufficient to show, that certificate No. 39, offered by the plaintiffs, was recommended by the traveling board, and that it was the original in lieu of which the duplicate was issued.

The Act of the 20th of March, 1848, provides that certain officers, including the Commissioner of the General Land Office, shall "give certificates attested by the seals of their respective offices certifying to any fact or facts contained in the papers, documents, or records of their offices, to any person applying for the same." Pasch. Dig., art. 3808. But that act does not provide, as does the Revised Statutes, that such certificates shall be received in evidence. Rev. Stats., art. 2253. We therefore think there was no error in excluding the certificate made by Commissioner Crosby in 1853, to the effect that the Bulrese certificate had been recommended by the traveling board.

The defendant offered in evidence the affidavit made by one Barnes Parker in order to procure the duplicate certificate by virtue of which the land was patented. The plaintiffs objected to its introduction on the ground that it appeared to have been made before the Commissioner of the Land Office, who had no authority at that time to administer oaths. We need not decide the question. The evidence was not relevant to any issue in the case, and upon another trial if plaintiffs desire they can have it excluded upon that ground.

The assignments of error are very numerous and present in some instances the same questions in a different form. Without considering them in detail, we have endeavored to pass upon all the questions presented which are likely to arise upon another trial.

The judgment is reversed and cause remanded.

　　　　　　　　　　　　　　　　　　　*Reversed and remanded.*

Delivered January 20, 1891.

Chief Justice Stayton not sitting.