FIRST NAT. BANK OF NAVASOTA v. TODD. (No. 7689.)

(Court of Civil Appeals of Texas. Galveston. April 10, 1919. Rehearing Denied May 8, 1919.)

1. APPEAL AND ERROR ☞1068(3)—HARMLESS ERROR—INSTRUCTIONS.

Where the evidence was of such a conclusive character as to make it doubtful whether any other conclusion could reasonably have been reached by the jury, it was harmless error for the court in its instructions to place the burden of proof upon the wrong party.

2. CHATTEL MORTGAGES ☞157(2)—FAILURE TO FILE—BONA FIDE PURCHASERS—BURDEN OF PROOF.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 5655, providing that chattel mortgages shall be void as against subsequent mortgagees or lienholders in good faith unless forthwith deposited and filed in the office of the county clerk, the burden is upon the subsequent mortgagee or lienholder to show by a preponderance of the evidence that he was a bona fide purchaser or holder for value.

3. CHATTEL MORTGAGES ☞157(2)—FAILURE TO FILE—BONA FIDE PURCHASER—"CONSIDERATION."

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 5655, providing that chattel mortgages shall be void as against subsequent mortgagees or lienholders in good faith unless deposited in the office of the county clerk, proof by subsequent mortgagee of the execution of his mortgage together with the fact that a note was taken for a less amount than an old one evidencing the same indebtedness, and that an extension was granted, was not sufficient to show that the subsequent mortgagee was a bona fide mortgagee for value, there being no showing that the extension was not a mere incidental; such an extension not constituting a new consideration (citing Words and Phrases, First and Second Series, Consideration).

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

4. CHATTEL MORTGAGES ⬤⟿157(2) — UNRE-
CORDED MORTGAGE—BONA FIDE MORTGAGEE
—EVIDENCE.

In action by a subsequent chattel mortgagee
to foreclose a mortgage, where a prior mortgagee
intervened, evidence *held* to warrant a finding
that plaintiff was not a bona fide subsequent
mortgagee for value, although the mortgage was
executed in renewal of an older mortgage, and
although the mortgagee advanced the fees or
charges for preparing the instrument, and al-
though mortgagor was credited with a balance
left over of $1.60.

Appeal from District Court, Grimes Coun-
ty; E. A. Berry, Judge.

Suit by the First National Bank of Navaso-
ta against R. A. Barker, in which J. S. Todd
intervened. From a judgment for intervener,
plaintiff appeals. Affirmed.

Lewis & Dean, of Navasota, for appellant.
T. P. Buffington, of Anderson, and I. W.
Stephens, of Ft. Worth, for appellee.

GRAVES, J. The First National Bank of
Navasota, appellant, sued R. A. Barker upon
two notes and to foreclose a mortgage dated
January 20, 1916, given to secure them on
certain steers, cows, horses, and mules.
Pending the foreclosure, in order to prevent
waste or loss, the court ordered the steers
sold, and the proceeds were placed in the
registry of the court to await the outcome of
the litigation.

Both of the bank's notes were payable
June 1, 1916, the smaller of them, $441.80 in
amount, bearing date of December 9, 1915,
while the larger one, being for $5,416.20, was
of even date with the mortgage declared up-
on, January 20, 1916. This mortgage de-
scribed the steers involved as branded A B
on the left side.

Subsequent to the sale of the steers, J. S.
Todd, the appellee here, intervened in the
cause, claiming a superior lien to that of the
bank upon the steers and to the proceeds of
their sale by virtue of his ownership of three
mortgages given by Barker to Evans-Snider-
Buel Company, a corporation, in security for
notes aggregating $6,134.81, the mortgages
being dated, respectively, January 5, Janu-
ary 19, and February 5, 1916.

Defendant Barker did not answer, judg-
ment going against him as by default, and,
while the bank made no answer to intervener
Todd's allegations of prior right to the
amount then on deposit in court, the cause
was tried as between these two rival claim-
ants thereto before a jury on special issues.
Upon the jury's answers being returned, the
court entered judgment in the bank's favor
against Barker for the full amount of the debt
and foreclosure of the mortgage lien declared
upon by it against him, subject, however, to
the lien of the intervener upon the sum so on
deposit, $2,411.50, which was foreclosed as be-
ing superior to the bank's claim, and the
amount was ordered paid over to the inter-
vener. From that judgment the bank pre-
sents this appeal.

[1] In logical sequence the first fact issue
below was whether the steers described in
the bank's mortgage of January 20, 1916,
were the same as those described in the one
held by intervener of January 5th preceding.
This inquiry was embodied in the second
special issue submitted to the jury, and was
answered by a finding that the steers covered
by both instruments were the same. Irre-
spective of where the burden of proof in es-
tablishing that fact lay, testimony relating to
the matter being freely offered by both liti-
gants, the overwhelming weight of all the
evidence touching it so amply supported the
jury's finding as to make it doubtful whether
any other conclusion could reasonably have
been reached. In these circumstances, error,
if any, in advising the jury which of the par-
ties had the laboring oar in inducing that
conclusion, obviously became immaterial and
wholly harmless. With the evidence upon
the point of the conclusive character stated,
it is not deemed necessary to reiterate it here,
but merely to make the jury's finding our
own. The assignments criticizing that part
of the court's charge dealing with the burden
of proof as to the identity of the steers are
accordingly overruled without more extended
discussion.

[2] The steers then being the same, since at
least the first of the intervener's three mort-
gages was also undisputedly prior in point of
time to the one held by the bank, the sole
remaining question in the contest for priority
of liens was whether or not the bank was a
bona fide purchaser or holder for value; and
upon that issue it undoubtedly, we think, had
the burden of proof, so that, under the devel-
opments of the case, the trial court's instruc-
tion that the bank had the burden of proving
its case by a preponderance of the evidence
was correct. Indeed, after the identity of the
steers covered by the mortgages of both par-
ties had been established, that became "the
whole case," or, as just suggested, the only
remaining issue between them.

Upon this feature of the case the jury
found, in response to special issue No. 1, that
at the time the bank took its mortgage of
January 20, 1916, upon the cattle therein de-
scribed, it parted with nothing of value in
consideration, or part consideration, for the
mortgage. If, under the facts here involved,
the effect of that finding was to leave the
bank without the pale of protection as a
bona fide lienholder for value, and there is
supporting evidence, it is thought the judg-
ment should be affirmed.

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Our statute (article 5655, Vernon's Sayles' Statutes) provides in substance that all such chattel mortgages as those here under consideration shall be void as against subsequent mortgagees or lienholders in good faith, unless forthwith deposited and filed in the office of the county clerk of the county where the property is then situated, or the mortgagor resides. In construing that article and the one immediately preceding it, article 5654, the Supreme Court, in Bowen v. Wagon Works, 91 Tex. 385, 43 S. W. 872, held that there is a distinction between the terms "creditors" and "purchasers" as used in these statutes, that the former includes only persons whose claims are, upon certain conditions, charged by law as specific liens on the property involved, such as holders of attachment, execution, judgment, landlord, and mechanic's liens, while the latter embraces all persons who have fixed their liens by contract or act of the parties, such as holders of trust deeds or mortgages, and that in these last-mentioned instances the mortgagees must show that they paid an additional valuable consideration for the lien at the time of its execution, a mere pre-existing debt alone not being sufficient. Of similar import also is the holding in Turner v. Cochran, 94 Tex. 485, which further furnishes direct authority for our previously stated conclusion as to the burden of proof being upon the bank here, in this paragraph quoted from page 486 of that opinion (61 S. W. 923, at page 925):

"We therefore conclude that the burden of proof was upon those claiming under the junior mortgage to show the facts which would give it precedence over the prior deed."

[3] Now the record here disclosed two uncontroverted facts: First, that both of the bank's notes represented pre-existing debts; second, that while the small note for $441.80 was not changed as to its maturity, the larger one for $5,416.20 was, contemporaneously with the taking of the mortgage of January 20, 1916, extended so as to become due June 1, 1916, instead of November 1, 1915, as theretofore. But there is no evidence whatever that this extension was contracted for as the consideration for the giving of the mortgage, or that it constituted the motive or inducement to give that security. There is completely wanting any suggestion of that sort; the testimony merely showing that upon the same date with the mortgage a new note, this one for $5,416.20, was taken for a less amount than an old one, evidencing the same indebtedness and made to mature on like date with the small note, June 1, 1916.

No witness testified that the mortgage of January 20, 1916, was executed by Barker to obtain an extension of time for the payment of what he owed the bank; but, on the contrary, the testimony of the officers and agents of the bank strongly tended to show the execution of this mortgage was demanded by the bank and executed by Barker solely to better secure an old pre-existing debt of the bank, because the bank felt insecure after learning that Barker had disposed of some of the property covered by the previous mortgage, and that the extension of time was a mere incident of and not the consideration for, the transaction.

It has been directly held that extension under such circumstances will not constitute a new consideration. Ingenhuett v. Hunt et al., 15 Tex. Civ. App. 248, 39 S. W. 310, writ of error refused, 42 S. W. xvi. See also 1 Pars. Cont. 355; Words and Phrases, vol. 2, p. 1445, col. 2. And, if this change in the maturity date of the larger note did not furnish the requisite additional consideration for the mortgage declared upon, there was scant showing otherwise even tending to indicate the existence of one. As already intimated, the mortgage itself was but the continuation of two previous ones, both of which had been given as security for an indebtedness maturing November 1, 1915, the reduced amount of which was carried into and evidenced by the new note for $5,416.20 so made to mature on June 1, 1916, this recitation appearing upon its face:

"This mortgage is given in renewal of and continuation of a mortgage heretofore executed by me to said bank, which is now on file in the office of the county clerk of Brazos county, Tex., and is hereby in all things renewed and continued in full force and effect. The changes made in said mortgage are due to the sale of 61 head of steers sold to Stinson & Batts and additional cattle added for which mules and horses were traded, and I hereby solemnly swear that I own the said cattle and have the same in my possession as aforesaid."

The prior mortgage thus referred to bore date of August 20, 1915, and likewise recited that it also was in renewal and extension of a still older one. Since all of these antecedent mortgages were indisputably shown to have secured the same indebtedness as did the one here involved, only in a larger amount, the recitation in the latter that the changes therein made were due to the sale of 61 head of steers, thereby reducing the amount of the indebtedness it secured, is very strongly persuasive of what we have said to be indicated in the testimony of the bank's witnesses, that the effort to obtain better security for an already existing debt rather than the release of any security formerly held really brought about the execution of the mortgage of January 20th. Indeed, that no

security already held either actually was or was intended to be surrendered in the taking of the new mortgage is practically conceded by the active vice president of the bank. After first saying that it had been suggested to them that possibly Mr. Barker did not still have all the cattle on which they then had a mortgage, and that he sent one of the bank's directors to make an investigation of the cattle he did have, he further testified with reference to this mortgage of January 20th, and why it was executed:

"I do know it was our intention to take a mortgage on everything owned by Mr. Barker."

"This mortgage was given in renewal of a previous mortgage. We drew the second mortgage up to show just what Mr. Barker had at that time."

"So far as I know, the property covered by the second mortgage was more than that covered in the first one. I only took his word about his owning 110 head of cows. I did not go out and count them myself. I did not have any one to make an investigation to find out about it."

When these statements are read in connection with the provision in the renewal mortgage itself that the previous one was not released, but "continued in full force and effect," it is difficult to see how the alleged release of any formerly held security could be said to have formed any part of the consideration for the mortgage sued upon.

The only other suggestion offered is that the fees or charges for preparing the instrument were advanced to Mr. Barker, and that he was credited with a balance left over of $1.60; but concerning both of these items the bank's vice president admitted:

"Yes; these were just incidental expenses which accrued in the execution of the second mortgage."

It therefore conclusively appears that these small matters were mere incidents of the transaction, and not the moving cause of the contract.

[4] If, then, there was neither such extension of time, relinquishment of formerly held security, nor payment of or credit for money as amounted to a consideration, the conclusion easily follows that the jury were not without warrant in finding that the bank parted with nothing of value in taking the mortgage.

This conclusion, under the deductions already made, determines the merits of the appeal and renders further discussion, as well as the statement of additional details of the case, unnecessary. All assignments are accordingly overruled, and the judgment is affirmed.

Affirmed.