**GULLY v. NYSTEL.  (No. 6353.)**

(Court of Civil Appeals of Texas. Austin. June 1, 1921.)

1. **Witnesses ⬤═240(4)—Question held objectionable as leading.**

The question whether a written instrument embodied the terms of the agreement between the parties, being susceptible of a simple affirmative or negative answer, is leading.

2. **Appeal and error ⬤═1048(3)—It is reversible error to permit a leading question on material issue over objection.**

It is reversible error to permit a leading question over objection on a controverted material issue.

3. **Witnesses ⬤═271(1)—Questions designed to show that writing did not embody intention of parties not improper.**

Where plaintiff contended that a written instrument prepared by an attorney embodied the agreement between the parties and the attorney so testified, the exclusion of questions whereby the attorney was asked if certain portions of the written statement were not different from the oral agreement was improper.

4. **Witnesses ⬤═255(5)—Original memoranda, and not itemized account, should be used to refresh memory.**

In an action for work done, an itemized account filed by plaintiff should not be used to refresh his memory where it was prepared by plaintiff's counsel from memoranda furnished by plaintiff, who testified that the same was at his house; it not appearing where his house was or that the memoranda was lost.

5. **Mines and minerals ⬤═113 — Provision in contract for operation of lease allowing sale within 90 days held not to prevent acquisition of lien.**

A provision in a contract with lessee for the operation of an oil lease allowing sale of the lease by lessee within 90 days does not prevent acquisition of a mechanic's lien on the lease, particularly where it does not appear that the property was sold within the 90-day period.

6. **Escrows ⬤═13—Deed delivered in escrow relates back.**

Where a deed is delivered in escrow, and the terms of the escrow are afterwards complied with, it relates back to the date of execution and conveys title from that time.

Appeal from District Court, Brown County; J. O. Woodward, Judge.

Action by T. C. Nystel against W. D. Gully. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Harrison, Cavin & Key, of Brownwood, for appellant.

**Findings of Fact.**

JENKINS, J. Appellant was the owner of an oil lease, which he had obtained from one J. R. Stewart, owner of the fee. He entered into an agreement with appellee with reference to operating this lease. They stated the terms of their contract to Mr. Courtney Gray, an attorney, who made memoranda of the same, as he understood it, and therefrom drew up the following written document:

'"This memorandum of a contract and agreement made and entered into by and between W.

D. Gully, of Brown county, Tex., party of the first part, and T. C. Nystel, of Brown county, Tex., party of the second part, witnesseth:

"That whereas, party of the first part is the owner of an oil and gas mineral lease covering about fourteen acres of land, situated about two miles southwest of the town of Brownwood, Brown county, Tex., being a part of the M. L. McAnally pre-emption survey, abstract No. 694, and known as the J. R. Stewart lease, and on which there are now a number of producing oil wells;

"And, whereas, party of the first part has entered into a contract with party of the second part, by which said party of the second part is to take over the care, management, operation, and further development of said lease for the consideration and upon the terms and conditions hereinafter set out as follows, to wit:

"(1) Party of the second part agrees and obligates himself to move his drilling equipment, which includes all such apparatus and appliances as he now owns and commonly used for drilling, operating, and cleaning oil and gas wells, to said premises and install the same thereon on or before the 25th day of August, A. D. 1919. Party of the second part shall on or before said date assume the care, management, and operation of all the producing wells now on said premises, and shall undertake and prosecute such further and other drilling operations as may be mutually agreed to by the parties hereto and J. R. Stewart, owner of the fee. Said drilling operations, if any, shall be done with equipment belonging to party of the second part, and at his own expense as hereinafter set out; provided, however, that should additional equipment be necessary and required, party of the second part may purchase same in an amount not to exceed five hundred dollars, same to be paid for out of his part of the production as hereinafter set out. Should equipment of the value of more than five hundred dollars be necessary and required, party of the first part must be consulted and a mutual understanding had.

"(2) This contract is for a period of ninety (90) days from the 25th day of August, 1919, but may be extended by mutual agreement of the parties hereto. However, it is expressly understood and agreed that party of the first part may sell said lease within said time and terminate this contract. Party of the second part shall immediately after moving upon said lease take such steps as may be necessary to increase the wells thereon to their maximum production, which shall include the cleaning and proper pumping of same, and shall use all due diligence in the care, management, and operation of same during the life of this contract. He shall make a report to party of the first part each and every Saturday night as to work done during the current week and as to condition of the wells.

"(3) The consideration for this contract is that party of the second part shall receive five-eights (⅝) of the gross production from the wells now on said lease and from such other wells as party of the second part may drill. But, in the event that a sale of said lease shall be made before the termination of this contract, party of the second part shall have a commission on said sale as follows:

"If the said lease sells for less than ten thousand dollars, party of the second part shall have such commission thereon as may be mutually agreed upon; if said lease shall sell for ten thousand dollars and no more, party of the second part shall have a commission of 5 per cent. or five hundred dollars; if the said lease shall sell for more than ten thousand dollars, party of the second part shall have the option of accepting five hundred dollars as above provided, or he may take in lieu thereof 25 per cent. of the difference between ten thousand dollars and the sale price.

"(4) In the event of the purchasing of additional equipment as above provided for, the purchase price thereof shall be charged to the five-eighths interest in the production herein set over to party of the second part. But should a sale of the lease be made before party of the second part shall have realized sufficient funds from his five-eighths interest to pay for said equipment, party of the first part shall refund to party of the second part such an amount, which, plus five-eighths of the production or its value, will equal the amount so expended for such equipment. Party of the first part shall further pay party of the second part for his time, and for the use of his tools, rigs, and equipment, at the regular customary rate for such time, tools, rigs, and equipment from the date of this contract to the time of such sale and delivery of the premises to such purchaser. Party of the second part shall also have his commission on such sale as provided for above.

"(5) All pumps, casing, and other equipment now on said lease shall be utilized by party of the second part in the care and operation of the wells now drilled and to be drilled, and in case additional wells shall be drilled by party of the second part, as herein provided, party of the first part shall furnish all necessary casing and pumps for same.

"This contract done in duplicate.

"In testimony whereof, we hereunto sign our names, this the 18th day of August, A. D. 1919.
                    "————————,
                    Party of the First Part.
                    "T. C. Nystel,
                    "Party of the Second Part."

Appelleee brought suit against appellant to recover for work done on this lease, alleging that the instrument above set forth constituted a written contract with reference thereto. Appellant denied that this instrument constituted a written contract, but alleged that when the same was presented to him he refused to sign it, for the reason that it did not embrace the oral contract entered into between the parties. He set out what he claimed to be the substance of the oral contract so made.

In addition to the special plea above referred to, the appellant pleaded a general demurrer, general exception, and several special exceptions. The exceptions were all overruled.

The contract, whether same was written or oral, was entered into about the 18th of August, 1919. There was no specific renewal of the contract, but appellee continued to work upon the lease until shortly before

April 6, 1920. On the date last mentioned he made out what purported to be an itemized statement of his account against appellant for work done on the lease, and filed the same, together with the purported written contract above set out in the office of the county clerk of Brown county. On March 29, 1920, appellant delivered in escrow to the Citizens' National Bank his deed in writing, assigning said lease to Herrick and Turner. The bank was authorized to deliver this deed to Herrick and Turner, upon the payment of $5,000, on or before 60 days thereafter, and of $8,000, on or before 120 days from said date; $500 was paid by Herrick and Turner in cash at the time said deed was delivered in escrow. The court instructed a verdict in favor of appellee for the amount of his itemized account, to wit, $2,711, and also foreclosure of a mechanic's lien on said lease. Appellee entered a remittitur of $360.

### Opinion.

[1] Upon the trial hereof, the court permitted appellee, after he had identified the written instrument set out in the findings of fact as the instrument which he claimed to be the contract between the parties, to answer, over appellant's objection, the following question:

"Did that (meaning said writing) embody the terms of the agreement (meaning the agreement between plaintiff and defendant, on which this suit is predicated)?"

To which appellee answered "Yes."

Also the court permitted Courtney Gray, the attorney who drew said written instrument, after he had been shown and examined and identified the writing, claimed by plaintiff to embody the contract between himself and defendant, to answer the following question:

"Did that (meaning said writing) correctly reflect the agreement between plaintiff and defendant, as stated to you by them at the time you made the memoranda from which said contract was drawn?"

To which the witness answered "Yes."

Each of these questions was objected to, because: (a) It was leading; (b) it called for the opinion and conclusion of the witness; (c) it elicited the conclusion and opinion of the witness on a mixed question of law and fact, the very question the jury would have to decide in this case; and (d) because said writing was not signed by the defendant.

We sustain appellant's exceptions to the action of the court in permitting the witnesses to answer as above indicated. A question is leading when it can be answered by "Yes" or "No," and when, by a simple affirmative or negative answer, it reflects back the language of the question, the same being framed in such manner as to indicate the answer desired. Railway Co. v. Dahwigh,

92 Tex. 656, 51 S. W. 500; Lott v. King, 79 Tex. 299, 15 S. W. 231; Railway Co. v. Hammon, 92 Tex. 509, 50 S. W. 124; Baker v. Thomas, 201 S. W. 216; Railway Co. v. Taylor, 203 S. W. 90.

[2] It is reversible error to permit a leading question, over objection, on a controverted material issue.

[3] Also the court sustained an objection to questions propounded to the witness Gray, which sought to obtain an admission from Gray that the written instrument did not truly reflect the agreement between the parties made in his presence. This was sought to be done by reading to him certain portions of the written statement, and asking him if the oral agreement was not different from the clauses of the written instrument read. No brief for the appellee has reached us, and we do not know upon what ground the court refused to permit the witness to answer the questions above referred to. We infer from appellant's brief that the ground for the court's ruling was that the instrument was a written contract, to be construed by the court, and not by the witness. The effort was not to have the witness construe the legal meaning of the written instrument in so far as the court or jury was concerned, but to prove by him that this instrument, as he understood it, did not embody the true agreement between the parties. It was error to sustain the objection to these questions.

[4] The appellee, when on the stand, was permitted to see the itemized account filed by him, as a means of refreshing his memory as to the work done by him. This was objected to on the ground that it was shown that this itemized account was written by appellee's attorney from memoranda furnished by appellee, and which memoranda the appellee testified were at his house. It does not appear from the record where his house was, but, if the original memoranda made by appellee have not been lost, it would be more reliable evidence than the account made by the attorney, and, if he desired to refresh his memory as to the items, he should be required to produce the original memoranda made by him.

[5] It is the contention of the appellant that the contract, whether the same was written or oral, excluded the idea that appellee was entitled to a mechanic's lien, for the reason that it provided that the appellant might sell the lease within 90 days. The lease was not sold within 90 days. If it had been, the contention of appellant would be plausible, if not sound. Inasmuch as the lease was not sold in 90 days, we think the proviso in the contract that the appellant might sell the same within that time would have no effect upon the proposition as to whether or not appellee was entitled to enforce his mechanic's lien against the leased premises.

It is also the contention of appellant that, inasmuch as appellant had sold the lease before the attempt to fix a mechanic's lien, it could not be enforced against his assignees; it being appellant's contention that appellee knew of such sale before he attempted to fix his mechanic's lien.

[6] Where a deed is delivered in escrow, and the terms of the escrow are afterwards complied with, it relates back to the date of its execution, and conveys title from that date. Sykes v. Fischl, 212 S. W. 219; Ketterson v. Inscho, 55 Tex. Civ. App. 150, 118 S. W. 626; Henry v. Phillips, 105 Tex. 459, 151 S. W. 533.

Upon another trial of this case, if it shall appear that appellant had sold the lease and delivered a deed to the same in escrow, and that the assignees complied with the terms thereof, and that appellee knew of such sale before he attempted to fix his mechanic's lien, no judgment should be entered foreclosing the mechanic's lien.

For the reasons stated, the judgment of the trial court is reversed, and this cause is remanded for a new trial, in accordance with this opinion.

Reversed and remanded.