### Ed. H. Cunningham et al. v. Henry P. Neal.

Decided March 24, 1908.

**1.—Pleading—Personal Injuries—Particularity.**

In a suit for personal injuries, pleading of plaintiff considered, and held not subject to an exception that the same was too vague, indefinite and uncertain, and did not allege with sufficient particularity the nature and extent of plaintiff's injuries.

**2.—Evidence—Leading Question—Definition.**

A question which may be answered by "yes" or "no" is not leading unless the form of the question suggests the answer. Question considered, and held not leading.

**3.—Health or Sickness—Non-expert Testimony.**

A non-expert witness may give his opinion on questions of apparent conditions of the mind or body, sickness, health, etc. Testimony as to physical pain considered, and held competent.

**4.—Master and Servant—Assumed Risk—Charge.**

A charge upon assumed risk should comprehend the dangers which the servant assumed by his employment and exclude the risks which he did not assume. In a suit by a servant against his master for personal injuries, charge upon assumed risk considered, and held correct.

**5.—Railroad—Operation—Evidence.**

A private corporation which owns and operates a sugar mill, lays tracks of standard gauge in the yard of its plant, rents a locomotive, employs a crew of men to operate the same, and switches cars back and forth between the mill and a siding of an adjacent railroad, is engaged in operating a railroad within the meaning of the fellow-servant statute.

**6.—Personal Injuries—Dangerous Place—Knowledge—Charge.**

In a suit by a servant against a master for damages for personal injuries caused by being crushed between a post and a moving train of cars, a charge to the effect that plaintiff's right to recover would not be defeated by the proximity of the post to the track, and plaintiff's knowledge thereof, if such proximity did not of itself, unaided by any negligent act of defendant's serv-

ants, occasion the injury, was proper when considered in connection with other portions of the charge.

#### 7.—Master and Servant—Assumed Risk— Contributory Negligence.

An employe has the right to assume that his fellow servants will conform to the rules and practices usually observed, and hence is not guilty of contributory negligence, nor does he assume any risk when, in reliance upon such presumption, he places himself in a position of danger in the discharge of his duties.

#### 8.—Damages—Verdict not Excessive.

In a suit for personal injuries, a verdict for $4,300 held not excessive in view of the evidence.

Appeal from the District Court of Fort Bend County. Tried below before Hon. Wells Thompson.

*C. R. Wharton, Lane, Jackson & Wolters* and *Baker, Botts, Parker & Garwood,* for appellants.—The nature and extent of plaintiff's injuries were matters peculiarly within his knowledge, and in answer to a special exception he should be required to plead definitely the nature and extent of his injuries for the information of the defendant, and when he fails to do so, should not be allowed to introduce evidence touching his injuries. Houston Electric Co. v. McDade, 79 S. W. Rep., 100; Gulf, C. & S. F. Ry. v. Pendery, 14 Texas Civ. App., 60; Gulf, C. & S. F. Ry. v. Jones, 1 Texas Civ. App., 372; Missouri, K. & T. Ry. v. Follin, 29 Texas Civ. App., 512.

Under the undisputed evidence, Cunningham & Co was not a corporation organized for the purpose of operating a railroad, but was organized for the purpose of manufacturing sugar from cane, hence, as a matter of law, it was not a railroad within the meaning of the fellow-servant Acts of 1897, 4560f, and Neal and his co-employes, of whose negligence he complains, were fellow-servants of each other, under the common law rule. Massachusetts L. & T. Ry. v. Hamilton, 11 Am. & Eng. Ry. Cases, 774; Funk v. St. Paul City Ry., 63 N. W. Rep., 1099; Wade v. Lutcher & Moore, 74 Fed. Rep., 519; Riley v. Galveston City Ry. Co., 13 Texas Civ. App., 247; Swansea Improvement Co. v. Swansea Urban Sanitary A., 1 Q. B., 357 (1892); Whatley v. Zenida Coal Co., 26 So. Rep., 124; Beeson v. Busenbark, 25 Pac. Rep., 48; Palangio v. Wild River Lumber Co., 29 Atl. Rep., 1087; White v. Kennon, 9 S. E. Rep., 1082.

*Lovejoy & Parker, W. G. Love* and *R. J. Channell,* for appellee.

McMEANS, Associate Justice.—Neal sued the Sugarland Railway Company, Ed. H. Cunningham & Co., a private corporation, engaged in the manufacture of sugar, and Ed. C. Lassiter, its receiver, and W. C. Zelle, receiver, who succeeded Lassiter during the pendency of the litigation, and the Cunningham Sugar Company, which had taken over the property of Ed. H. Cunningham & Co. from the hands of the receiver during the pendency of the suit, for damages for personal injuries sustained by him. He alleged that while he was in the employment of defendants in the capacity of foreman of the switching crew in defendants' railroad yards at Sugarland,

the defendants, their servants and agents, negligently and carelessly caused and permitted a string of cars to be backed over and against him, catching and mashing him between a car and a shed post, without any warning or notice to him and without warning or notice from him; that at the time he was in a place of danger and that his co-employes aiding and assisting him knew that said cars should not be moved or disturbed except upon due and proper signal from plaintiff; that it was their duty to keep a proper lookout for him, and not to move the cars in any event without a signal from him or without a signal to him, but that negligently disregarding their duty in that behalf they caused the cars to be moved against him, without signal of any kind. He further alleged that it was the duty of the engineer and fireman to give signals before moving the engine against the cars and this duty they negligently failed to perform.

Defendants answered by general demurrer, special exceptions, and pleaded contributory negligence, in that the position of the shed post against which plaintiff was caught by the moving car was obvious, and that he failed to properly observe his surroundings before going between the post and the car; and further pleaded that if plaintiff was injured as alleged in his petition the co-employes were his fellow-servants for whose negligent acts defendants were not liable.

Plaintiff recovered judgment on the verdict of a jury against W. C. Zelle, receiver, and the Cunningham Sugar Company for $4300. Under instructions from the court the jury returned a verdict in favor of Lassiter, receiver, Ed. H. Cunningham & Co., and the Sugarland Railway Company. Appellants' motion for new trial having been overruled they have brought the case before us on appeal.

Appellants' first and second assignments complain of the refusal of the court to sustain their special exception to the petition, in that the allegations of injuries received by appellee were too vague, indefinite and uncertain and did not recite with sufficient particularity the nature and extent of appellee's injuries, and in permitting the witness, Dr. Boyd, to give testimony with reference to such injuries because the pleadings were too vague and indefinite in their character to admit of the testimony.

The allegations of the petition as to the nature and extent of the injuries, are as follows:

"That he received then and there serious and permanent injuries in the following respects, to wit:

"(a) In that the inner or outer table, or both, of his skull was fractured. That as a result thereof it is in a condition where foreign substance may obtain a footing and progressive growth, such as adhesions, exudates, calculus, cysts or tumors, extravasation of blood or hemorrhage. That his skull was fractured in the temporal, parietal and occipital regions, and his frontal bone seriously injured.

"(b) That his brain was injured.

"(c) That his eye and eyesight are almost destroyed, making it impossible for him to read; that he experienced great pain and difficulty in attempting to see; that his hearing in both ears was affected and injured.

"(d)    That his arms, shoulders, sides, hips, legs and feet were bruised and injured, and the left clavicle fractured.

"(e)    That the cervical, dorsal and lumbar vertebrae, and the spinous and transverse processes thereof, as well as the nerves, muscles and ligaments surrounding and connected with his vertebrae were injured, as a result of which he is suffering from neurasthenia and spinal concussion.

"(f)    That his heart, lungs, kidneys, liver and bladder, by reason of said injuries, and as a result thereof, have become involved and affected.    That his pulse and temperature are abnormal and erratic.

"(g)    That he has suffered and continues to suffer great physical pain and mental anguish.

"(h)    That he has lost appetite, he is unable to sleep, and is losing weight constantly.

"(i)    That the muscles of his body are atrophying."

The witness, Dr. Boyd, testified that he examined Neal about six weeks after he was injured, and, from the evidences, the witness could testify that one of his collar bones had been fractured; that four ribs had been injured; that the left shoulder had been injured, either sprained or dislocated; that there were "extensive scars on his head, one about nine inches long, beginning over the side of the left eye and running back over his forehead on back of his head; another scar on the right side about two and one-half or three inches long, running back toward the ear, back of the eye; he had, also, another scar, possibly one inch long, on the other side back of his ear."    That his hearing was defective—probably one-half or one-third what it should be; that he suffered from squint of his eyes—crossed eyes; that he was nervous, had "encreased ceroflexis;" that his examinations made at different periods showed this latter disease to be increasing in intensity all the time; that, from the indications at the time his examinations were made, he was unable to learn whether or not there had been a fracture of the skull or an injury to the membranes of the brain, but that Neal's general condition since his first examination has grown worse, which would indicate that there has been severe injury to the brain or the brain membranes.    That the heart's action has increased in rapidity; has become more or less irregular, and the area over which it can be felt largely increased in size, indicating that the heart has become enlarged; pulse rate had increased from ninety-six at the first examination to one hundred and forty-four, commonly running about one hundred and thirty-two; that seventy to ninety is normal.    That neurasthenia is nervous exhaustion, and lack of nerve control; that the first time he weighed Neal, which was about one year before the trial, Neal, weighed one hundred and sixty-seven pounds; ten days before the trial he weighed one hundred and fifty-six.

The assignments are without merit and are overruled.

Appellants' third assignment is based on the refusal of the court to sustain their objection to the following question propounded to plaintiff while testifying in his own behalf:

"State whether or not you gave Mr. Dargan or the engineer any orders or instructions to move these cars, to which you instructed

them to couple, across the dirt road on to the two cars situated west of the dirt road?" To which the witness answered: "I did not." Appellants contend that the question was leading and that plaintiff was told by the form and language of the question exactly what his counsel desired him to answer. We do not think the question obnoxious to the objection made. Under the rule generally laid down by text writers the question would be leading, in that it embodies a material fact and may be answered by a simple affirmative or negative, but as said by Justice Pleasants in International & G. N. Ry. v. Collins, 33 Texas Civ. App., 58, " . . . our Supreme Court has modified this rule, and holds that a question which may be answered by a simple 'Yes' or 'No' is not leading unless the form of the question suggests the answer." It would be impossible to tell from the form in which the question was put what answer was desired, and therefore the question can not be considered leading. Lott v. King, 79 Texas, 292; International & G. N. Ry. v. Dalwigh, 92 Texas, 655. The assignment is overruled.

The witness, Caroline Neal, testified as to the condition of the health of appellee as follows: "He (appellee) has been very nervous; he has attacks of nervousness. Often mother and I have been up with him two or three nights at a time. He is troubled with his heart. He imagines that his heart don't beat and sometimes it seems that it has almost stopped; he did not sleep; he just shakes all over and just has terrible nervous attacks. He has these attacks about once a month and it seems like they last three or four days, and then he gets better and seems to be all right until another one comes on."

This testimony was objected to, and it is urged that the witness not being an expert it was error to allow her to give the testimony, which was nothing more than an opinion as to the state and condition of plaintiff's health. The testimony complained of was a mere statement of facts gathered from observations of outward manifestations open to all who came in contact with appellee subsequent to his injury and was competent as showing his physical condition. But conceding that the witness was stating her opinion, the rule laid down by text writers, and which seems to have been followed in this State, is that a non-expert witness may give his opinion on questions of apparent conditions of the body or mind, sickness, health, etc. "Such testimony is received in the particular cases or instances mentioned because a mere description without the witness's opinion would convey an imperfect idea of the force and meaning and inherent character of the things described." 1 Greenl. on Ev., 13 ed., sec. 439; St. Louis S. W. Ry. Co. v. Brown, 30 Texas Civ. App., 57. The assignment presenting the point is overruled.

The court after instructing the jury that Neal assumed all risks ordinarily incident to his employment—all which were obvious and all which were known to him or would necessarily be known to him by the exercise of ordinary care in the discharge of his duties, added: "And the employe has a right to assume that the employer will use ordinary care in the performance of his duties until he knows, or in the exercise of ordinary care would know, the contrary." This clause of the charge is complained of on the ground that it is abstract,

and not applicable to the facts of this case. The court's definition of "assumed risk" as applicable to the case was not complete until it comprehended the dangers which Neal assumed by his employment and excluded the risks which he did not assume. If in fact the charge was not called for by the facts it is inconceivable that in the light of all the testimony and the entire charge of the court it could have operated to appellants' prejudice. The assignments can not be sustained.

By their sixth assignment appellant complains of that part of the court's charge which submitted to the jury the question of whether Ed. H. Cunningham & Co. at the time of plaintiff's injury was engaged in operating a railroad, it being .contended by appellants that under the undisputed evidence Ed. H. Cunningham & Co. was not then engaged in operating a railroad and it was error to submit this as an issue of fact to the . jury. According to the testimony of appellants' witnesses, Ed. H. Cunningham & Co. was a private corporation, which owned and operated sugar mills and refineries and a paper mill, and was also engaged in farming. The grounds occupied by the refinery, buildings, mills and warehouses at Sugarland occupied about eight or nine acres of ground, and over and through these grounds there were numerous tracks and spurs of standard gauge railroad which were built by and were at the. time of the trial owned by Ed. H. Cunningham & Co. and its successors; that the locomotive engine was rented by Ed. H. Cunningham & Co. from the Sugarland Railway Company, and was used in the yards for the purpose of switching cars and transferring the same from the sidings of the adjacent railroad to the refineries and warehouses of Ed. H. Cunningham & Co.; that the crew of men who operated the locomotive used at. the switch yards were employed and paid by Ed. H. Cunningham & Co., and all the cars delivered to the said company by the Southern Pacific or Sugarland Railroad Companies were handled upon the yards of the Cunningham Company by the engine and crew of that company. This evidence was undisputed and conclusively shows that Ed. H. Cunningham & Co. were engaged in operating a railroad, and it was an error for the court to submit the issue to the jury; but such error was one in favor of and in no way prejudicial to the appellants. Cunningham v. Neal, 49 Texas Civ. App., 613. The assignment raising the point is overruled.

Under the seventh and .eighth assignments appellants present the proposition that under the undisputed evidence in this case, Ed. H. Cunningham & Co. was not a corporation organized for the purpose of operating a railroad, but was organized for the purpose of manufacturing sugar from cane, and therefore, as a matter of law, it was not a railroad within the meaning of the fellow-servant statute, Acts of 1897, art. 4560 f; and that Neal and his co-employes, of whose negligence he complains, were fellow servants of each other under the common law rule. This question was decided by our Supreme Court adversely to appellants' contention, upon a certified question presented by this court. Cunningham v. Neal, 49 Texas Civ. App., 613. The assignments are overruled.

The ninth assignment is predicated upon the eighth paragraph of

the court's charge which is as follows: "If, however, you do not find from a preponderance of the evidence the facts set forth in the preceding paragraph, as essential to plaintiff's right to recover, to exist, you will, without inquiring further, return a verdict for all the defendants; or, if you find the facts as therein set forth to exist, you will, nevertheless, return a verdict for defendants, if you believe from the evidence that, at that time, or before the plaintiff was injured, he failed to observe his surroundings and take proper care and precaution to prevent being struck by the approaching cars; or that knowing the position of the shed post, he went carelessly about his work in such a way as not to afford himself protection from his surroundings.

"In this connection, you are instructed that the plaintiff's knowledge of the post, and the nearness thereof to the track, could not in law defeat his right to a recovery, if you find from the evidence that he would not have been injured but for the backing of the cars, and you find that such backing was negligence, as submitted to you in paragraph VII of this charge, and you do not find the plaintiff contributed to, or brought about, his injury, in the manner above stated in this paragraph of this charge."

The latter subdivision of the paragraph is complained of as being on the weight of the evidence, and calculated to lead the jury to believe that plaintiff's knowledge of the position of the post would in no way affect his right to recover. The answer of the defendants in the court below contained the following allegations with reference to the position of the post. "Plaintiff knew, or in the exercise of ordinary care in the discharge of his duties could have known, the position of the posts referred to in his petition, but regardless of these facts he went about his work carelessly, in such a way as not to afford himself protection from his surroundings." Appellee testified on the trial he knew in a general way that there were a number of posts supporting the shed, but that he did not know their number, size or exact location with reference to the track extending through the shed. There was evidence strongly tending to show that the men operating the switch engine were negligent in backing the cars which crushed appellee against the shed post. Whether or not appellee knew, or should have known, of the proximity of the post to the track was a question of fact, which under the pleadings and evidence the jury was required to determine; as to the legal effect of this fact, when once determined, they looked solely to the court for guidance and that guidance, under the law, he was required to give. He did this, presenting appellants' theory of the case in even stronger language than they had presented it in their pleadings. If he had stopped after giving appellants' theory, as they insist he should have done, the jury would have been left with an erroneous idea of the significance of such knowledge on the part of appellee, and could have reasonably inferred from the charge given that if appellee started in under the shed to adjust the coupler of the loaded car, as he testified he did, knowing when he did so that the post was located very near the track, he thereby assumed the dangers incident to the negligent moving of the cars by the unauthorized and

improper operation of the switch engine. To forestall such an improper inference, and to place before the jury in its proper legal light the action of appellee in approaching the car, and the effect on his action of his knowledge of the position of the post, it was proper, if not necessary, for the court to go further and instruct the jury, as he did, that the right to recover would not be defeated by the proximity of the post to the track, and appellee's knowledge thereof, if such proximity did not, of itself, unaided by any negligent act of appellants' servants, occasion the injury. The assignment is overruled.

By the tenth assignment appellants complain of the refusal of the court to give their first special charge, instructing the jury, in effect, that there was no evidence that the servants in charge of the engine failed to keep a lookout, or moved the engine and cars without due and proper signals from the plaintiff, and on these features of the case to return a verdict for defendants.

By the eleventh assignment the verdict is assailed as being against the uncontroverted testimony in that there was no evidence that the train of cars was improperly moved without signal or was carelessly and negligently backed as alleged by plaintiff.

The twelfth attacks the verdict as being against the undisputed testimony, in that there was no evidence that the servants of defendants, in charge of the engine, were guilty of any act of negligence charged in plaintiff's petition.

Under these assignments, which are grouped, appellants assert the proposition that there was no evidence that the parties in charge of the engine were guilty of negligence in the particulars alleged in plaintiff's petition, hence the court should have charged the jury that there was no issue made in this regard, and in the absence of such evidence, a verdict should not be permitted to stand.

Appellee testified that there were eight cars on the track which extended under the shed, four of these being under the shed and four outside; of the four cars outside, two were coupled and stood between a dirt-road crossing and the shed, and the remaining two were coupled, and stood on the other side of the dirt road, leaving a clear space of ten or twelve feet between the two cars with which the engine would first come in contact and the next two cars, and a clear space of three or four feet between the second two cars and the cars under the shed, and a space about the same width between the first three of the cars standing under the shed and the last car, where appellee was hurt; that he ordered the man in charge of the engine to come up and couple onto the two cars at the far end of the track—those standing on the opposite side of the dirt road from the shed—that after giving this order he went over to the cars standing under the shed to arrange the automatic coupler and to warn laborers under the shed; that the engineer and switchmen were under his orders, and according to custom and practice in operating upon the yard, it was their duty to couple onto the first two cars and stand at that point until he should give them further signal; that he gave no further orders and did not give them any signal, or indicate in any way that they were to back the cars onto those standing under the shed, or to couple onto any but the first two cars; that

he did not know that they were going to move the entire string of cars at the time and in the manner they did move them, and that they had no right to do so without a signal from him; that while he was going down the string of cars and arranging the couplers, as it was his duty to do, he was struck by the moving cars set in motion by the engine, and was injured. The evidence further shows that an automatic coupler, when the knuckle is open, will attach itself to another car upon coming in contact with it. The knuckles on the first two cars had been opened, and if the engine had been stopped when it came in contact with these, the cars would have stopped also, and could not have continued on across the dirt road and set in motion the cars in the shed. In view of these facts the inference is imperative that the engine, after it coupled onto the first two cars, continued its backward movement toward the car shed. The continued approach of the engine established, there is no escape from the conclusion that appellants were negligent. The assignments are overruled.

Error is predicated upon the refusal of the trial court to give appellants' special charge No. 5 which instructed the jury that if there was a post situated and maintained in dangerous proximity to the track and at a distance that would not clear a brakeman or switchman, and if they believed that the plaintiff was injured because of the position and proximity of the post, and the position and proximity of the post was the proximate cause of the injury, then, under the pleadings in the case, the plaintiff could not recover, and to find for defendants. Appellants urge that since appellee's right to recover is based upon specific allegations that the injury was due to the negligence of the servants of defendants in the movements of the engine and cars, his right to recover should have been restricted to the allegations made in his petition. The court, in its general charge, so restricted his right and fully and clearly instructed the jury with reference to the influence of the proximity of the post upon appellee's right to recover, and no special charge upon the point was necessary. But if the general charge had not been sufficiently full and specific upon that point, it would not have been proper to give the special charge requested, because it was incorrect as a proposition of law in that it did not incorporate the principle that in order to defeat a recovery the proximity of the post must have been the sole proximate cause of appellee's injury. San Antonio Gas Co. v. Speegle, 60 S. W. Rep., 885; Gonzales v. Galveston, 84 Texas, 6.; St. Louis S. F. Ry. v. McClain, 80 Texas, 94; St. Louis S. W. Ry. v. Rea, 87 S. W. Rep., 324. The assignment presenting the point is overruled

By their seventh assignment appellants complain that the verdict of the jury was against the uncontroverted testimony, in that, the evidence showed that plaintiff was caught between a shed post and a car; that the position of the post was such that there was no room for a person to stand in safety between the post and the track while the car was being moved; that plaintiff had opportunity to know and must have known of the position of the post and that he, therefore, in placing himself between the post and the car, assumed the

622 TEXAS CIVIL APPEALS REPORTS, VOL. 49. [March,

risk of injury. This assignment is not well taken. The undisputed evidence having shown that the engine crew, under the rules and custom observed in the yard, had no right to move the car under the shed until appellee gave them the signal to do so, the mere fact that appellee might have known that he could not, with safety, stand between the post and a moving car did not deprive him of the right to presume that the train crew would conform to the rule and practice theretofore observed, and would not move the cars without a signal from him, and he did not assume the risk arising from their failure to so observe such rules and practices. Galveston, H. & S. A. Ry. v. Courtney, 30 Texas Civ. App., 544; St. Louis S. W. Ry. v. Rea, *supra;* Texas & N. O. Ry. v. Kelly, 80 S. W. Rep., 1077. Appellee, having the right to assume that the engine crew would observe the rules requiring them to await his signal before moving the cars into the shed, was not guilty of contributory negligence in going between the post and the car to arrange the coupling. He was not required to anticipate and guard against injuries which could result to him only through the negligence of the crew.

The nineteenth assignment complains that the verdict is excessive. The evidence showed that Neal was caught and mashed between a shed post and a box-car; that he was rendered unconscious, his collar bone broken, his arm dislocated, a rib fractured, his hand cut and that he was mashed through the breast; that he suffered great pain, that he is nervous and easily excited, can not rest or sleep at night, has a continual ringing in the head; suffers from palpitation of the heart; sometimes can only sleep in a chair; has double vision and his hearing was impaired; that he was thirty years old when injured, was strong and healthy, and weighed one hundred and eighty-five pounds; that since his injury he is never well; weighs one hundred and fifty-three pounds and that his condition is steadily growing worse. We do not think the verdict was excessive, and the assignment is overruled.

The other assignments of error presented by appellants have been examined by us, and in our opinion no reversible error is shown by any of them. The judgment of the District Court is affirmed.

*Affirmed.*

Writ of error refused.