YEATTS v. ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS. (No. 7433.)*

(Court of Civil Appeals of Texas. Dallas. Feb. 5, 1916. On Rehearing, March 25, 1916.)

1. EVIDENCE ☞477(2)—OPINION EVIDENCE—NONEXPERTS—APPARENT SICKNESS.

Where a witness had testified that he had known the injured person for a long time, and had seen her during the trial, and that he was unable to see any difference in her health since the alleged injury, a question asked on cross-examination whether there was anything about her the day before that suggested that she was sick was not objectionable as calling for a conclusion, since a witness may state the apparent physical condition of a person or the existing state of apparent sickness or health.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2238; Dec. Dig. ☞477(2).]

2. APPEAL AND ERROR ☞1058(2)—HARMLESS ERROR—EXCLUSION OF EVIDENCE—CURE BY SUBSEQUENT TESTIMONY.

The error in excluding the answer to such question was rendered harmless where the same witness on recross-examination, in answer to a question whether the woman not only looked frail, but looked sick, stated that he had made no close examination; that he only saw her for a few seconds the day before.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4195, 4201; Dec. Dig. ☞1058(2).]

3. APPEAL AND ERROR ☞692(1)—QUESTIONS PRESENTED FOR REVIEW—BILLS OF EXCEPTIONS—EXCLUSION OF EVIDENCE.

Assignments of error to the sustaining of objections to questions propounded to witnesses on direct examination will not be considered where the bills of exceptions supporting them

do not show what testimony appellant expected to elicit by the question.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2905, 2906; Dec. Dig. 692(1).]

4. APPEAL AND ERROR 692(1)—QUESTIONS PRESENTED FOR REVIEW—BILLS OF EXCEPTIONS—EXCLUSION OF EVIDENCE.

The rule that bills of exceptions to the exclusion of evidence must show the testimony expected to be elicited does not apply where questions were asked on cross-examination or where the motion to strike testimony was made.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2905, 2906; Dec. Dig. 692(1).]

5. WITNESSES 358—IMPEACHMENT OF PARTY—REPUTATION—SPECIFIC ACTS.

A witness who had testified to plaintiff's poor reputation for truth cannot be cross-examined as to whether plaintiff's personal dealings with witness were fair, whether he knew of a single dishonest act by plaintiff, or whether so far as the witness' personal knowledge was concerned, plaintiff was fair and square, since such questions are attempts to establish general reputation by proof of specific acts.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1159, 1160; Dec. Dig. 358.]

6. WITNESSES 360—IMPEACHMENT—REPUTATION—REBUTTAL—SOURCES OF REPORTS.

Where witnesses who impeached plaintiff's reputation for veracity had mentioned certain reports that plaintiff had burned buildings, plaintiff could not testify in rebuttal that those reports were circulated by persons who were his bitter enemies, though such enmity could be shown by other proof.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1165, 1166; Dec. Dig. 360.]

On Rehearing.

7. APPEAL AND ERROR 882(9)—REVIEW—INVITED ERROR.

Where plaintiff on cross-examination of witnesses who had impeached his reputation, elicited testimony as to particular incidents, he cannot complain that the court permitted the witnesses on redirect examination to give the details of those incidents.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3599; Dec. Dig. 882(9).]

8. WITNESSES 358 — REDIRECT EXAMINATION—SCOPE—IMPEACHING WITNESSES.

Under the right of a party on redirect examination of his witnesses to have matters brought out by cross-examination, but which the witness was not given an opportunity to explain fully detailed, an impeaching witness who was asked on cross-examination as to certain incidents effecting an adverse witness' reputation may be re-examined as to details of those incidents.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1159, 1160; Dec. Dig. 358.]

Appeal from District Court, Collin County; M. H. Garnett, Judge.

Action by Ed Yeatts against the St. Louis Southwestern Railway Company of Texas. Judgment for the defendant, and plaintiff appeals. Affirmed, and motion for rehearing denied.

B. Q. Evans and H. L. Carpenter, both of Greenville, and L. C. Clifton, of McKinney, for appellant. E. B. Perkins, of Dallas, and Head, Dillard, Smith, Maxey & Head, of Sherman, for appellee.

RASBURY, J. Appellant sued appellee for damages for personal injuries to his wife. There was jury trial, resulting in verdict for appellee, followed by similar judgment, from which this appeal is prosecuted. Briefly stated, appellant's testimony tended to show that prior to the time his wife was injured there was in the town of Josephine a concrete sidewalk maintained by the citizens extending north and south to appellee's side and main tracks, which extended east and west through the town. From the junction of the concrete walk with appellee's tracks appellee built and maintained a sand and gravel walk across the tracks to a junction with its passenger platform. The height of the concrete walk, the gravel and sand extension, and the platform was uniform. This way was customarily used by the citizens of Josephine in going to and from appellee's station to the south portion of the town. Prior to the time appellant's wife was injured appellee removed the sand and gravel constituting the portion of the walk between its main tracks, which were the tracks nearest its platform, and raised its tracks, which left its rails six or seven inches above the earth's surface and the cross-ties one or two inches above such surface. Subsequent to all the foregoing, and on April 22, 1914, at 3:40 a. m., appellant and wife alighted from one of appellee's passenger trains upon the unlighted platform and started in the usual way for their home south of the station. Appellant's wife had no knowledge of the changed condition of the walk, and when she reached the rails she stepped between them placing her foot upon the edge of one of the exposed cross-ties, with the result that her foot turned, and she fell and was seriously injured.

Appellee's testimony tended to sharply contradict appellant's claims, and to show that appellant's wife's injuries were due to other causes. Appellee's testimony also tended to show that the general reputation of the appellant, who was a witness to all the facts material to his recovery, for truth and veracity and honesty and fair dealing, was bad.

We deem the foregoing brief statement of the facts which the evidence will support sufficient, since all issues on appeal arise upon the admission or exclusion of testimony.

[1] It is first urged that the court erred in refusing to permit the witness Abbott to answer a question propounded by appellant. Abbott was a witness for appellee, and on direct examination testified, in substance, that he had known appellant's wife for 12 years prior to the trial, and had seen her during the trial, and that he was unable to see any difference in her appearance as to health or strength since the injury. On cross-examination the witness testified that, while appellant's wife walked and got about

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"lively," he never did regard her as a robust, healthy woman, but that there was nothing in her appearance to suggest that she was "sick at all."

Question: "Now, you saw her yesterday, and will you tell that jury that there was not anything about her that suggest[s] that she was sick yesterday?"

Had the witness been permitted to answer, appellant expected to prove by him that 'on the day inquired about appellant's wife appeared pale, emaciated, weak, and debilitated, with a loss of 20 or 25 pounds of flesh. However, upon objections by counsel that the question called for the opinion and conclusion of a nonexpert witness, the court excluded the answer, explaining in his qualification of the bill that the answer was not excluded on the ground that the witness could not testify as to the appearance of appellant's wife, but because the question did not call for an answer concerning the appearance 'of appellant's wife. The oft-stated rule under which it is urged the answer should have been admitted is that:

A nonexpert witness "may state the apparent physical condition of a man, * * * or as to what are more distinctly inferences from animate bodily phenomena, as the existence of a state of apparent sickness or disease. Such an observer may also state a change in apparent condition, whether the change is from sickness to health, or from health to sickness, or from bad to worse, or from worse to better. He may also infer and state that a person's ability to help himself, or his faculties or the use of his limbs or other parts of his body, or his earning capacity has or has not been impaired." 17 Cyc. 87.

To the same effect is Cunningham v. Neal, 49 Tex. Civ. App. 613, 109 S. W. 455, and cases cited, wherein the reasons for the rule are discussed. Consequently, under the broad and flexible rule stated, we are not prepared to say that the question was improper, or n'ot pertinent, as indicated by the court's qualification. Certainly it was not improper, because the witness was a nonexpert. Nor can it be said that the question was objectionable because it sought to elicit a conclusion 'or the opinion of the witness, since, based on the preceding testimony of the witness that he had seen appellant's wife before and after the accident and had observed her condition on both occasions, he was qualified to state his conclusion or his opinion concerning her illness.

[2] We conclude, however, that the court's action was harmless, because the witness on recross-examination answered substantially the same question. The record discloses that after the court sustained the objection to the question the witness was again examined by appellee's counsel, and in turn again examined by appellant's counsel, when he, in substance, testified that appellant's wife appeared to be physically weak and looked frail.

Question: "I will ask you if she not only looks frail, but looks sick?" Answer: "I haven't made any very close observation, I was just in her presence a few seconds yesterday evening in the judge's room."

The question excluded was whether she looked sick yesterday. The question finally answered was that he did not know whether she looked sick or n'ot because when he saw her "yesterday" in the judge's office it was only for a few moments, during which time he did not observe her closely. The answer of the witness to the last question was evidently the extent of his knowledge 'of the subject, since counsel did not pursue the examination further. That being true, and the question being so substantially similar to the one excluded, we are constrained to believe the court's action was not reversible error.

[3] The second, third, fourth, fifth, sixth, and seventh assignments of error relate to the exclusion of certain testimony tendered by appellant in rebuttal of certain facts attempted to be proven by appellee. To any consideration of the assignments appellee objects 'on the ground that the bills of exception supporting the assignments fail in each instance to state what the answer of the witness would have been to the questions propounded. The ground of the objection as relates to the second, third, fifth and seventh assignments is sustained by the record, and the objection will be sustained for that reason. Beeks v. Odom, 70 Tex. 186, 7 S. W. 702; Cunningham v. Austin & N. W. Ry. Co., 88 Tex. 534, 31 S. W. 629.

[4] As to the fourth and sixth assignments the objection is overruled, since said assignments relate in the one instance to the refusal of the court to permit the witness to answer questions propounded on cross-examination and in the other to the exclusion 'of testimony. In such cases a different rule applies. Cunningham v. Austin, etc., supra; Long v. Red River Ry. Co., 85 S. W. 1048.

[5] The next issue is the action of the court in refusing to permit the witness Reece to answer questions propounded by counsel for appellant. Reece was a witness for appellee, and had testified that he had known appellant for more than 20 years, had had no personal difference with him, and was on friendly terms with him, but that the general reputation of appellant for truth and veracity and honesty and fair dealing was bad. Upon cross-examination, after probing the facts upon which the witness based his conclusion and eliciting from the witness that he could recall but one circumstance, counsel for appellant inquired:

"His dealings with you were fair and square, were they not?"

The witness was not permitted to answer, whereupon counsel for appellant further inquired:

"Do you know of a single dishonest act that he ever performed or committed?"

Again permission to answer was denied, whereupon counsel inquired:

"Now, Mr. Reece, is it not true that in all of your personal dealings with him for the length

of time you have known him he always acted fair and square with you; so far as your personal knowledge is concerned, he is a square, honest man?"

Objection to this question was also sustained. The action of the court in all the matters stated was excepted to and is assigned as error.

We conclude that the court did not err in the respect stated. Appellee, in examining the witness, complied with the long-settled rule by proving appellant's general reputation in the community where he was known for truth and honesty. 16 Cyc. 1275; Boon v. Weathered, 23 Tex. 678, a ruling case in this jurisdiction; M., K. & T. Ry. Co. of Texas v. Creason, 101 Tex. 335, 107 S. W. 527; Holsey v. State, 24 Tex. App. 35, 5 S. W. 523.

The generally approved method for meeting the attack upon his character was for the appellant, under the same rules that the testimony of appellee was admitted, to introduce evidence in rebuttal to sustain his general reputation. 16 Cyc. 1276. Some authorities go a step further, and hold that the person whose reputation is attacked may, on cross-examination, call for the particular charges made against the one sought to be impeached and for the persons who made them. 16 Cyc. 1280; Chamberlayne, Mod. Law Evidence, vol. 4, § 3314. Such cross-examination, however, according to the authority cited, is admitted for the purpose of testing the credibility and knowledge of the witness, and is justified on the ground that it may disclose both a lack of knowledge and fair-mindedness on the part of the impeaching witness. The latter authority, however, declares that the practice borders dangerously near the forbidden practice of proving reputation by specific acts, and by indirection at least disapproves the rule. It will thus be seen that the evidence that was sought to be elicited from the witness Reece was under the rules stated properly excluded, since its effect was to establish by specific acts general good reputation.

[6] The next issue reviews the action of the court in excluding from the consideration of the jury a question propounded to appellant and his answer thereto. By certain of appellee's witnesses it was shown that there were reports in circulation in Josephine that appellant had caused the burning of certain buildings, and while appellant was testifying in rebuttal of said charges his counsel inquired, "I will ask if the men in Josephine talking about you burning these buildings were not your bitter enemies in that community?" to which appellant answered, "Yes," and which question and answer on motion of appellee were excluded. Appellant urges that such testimony was proper for the purpose of showing that those who circulated the reports were his bitter enemies. It is correct to say that animosity, enmity, or unfriendliness and consequent bias and hostility of witnesses may be shown when rel-evant; but not, however, by the naked declaration of the witness that animosity or enmity or unfriendliness in fact exists. Such was the effect of the excluded testimony, since it was unaccompanied by proof of any conduct or declarations of those so charged, upon which the jury could base a finding that such animosity, enmity, or unfriendliness in fact existed. Accordingly we conclude there was no error in the respect stated.

The eighth assignment of error complains of the refusal of the court to exclude certain testimony. Morrison, a witness, was sworn and examined by counsel for appellee ostensibly to prove that appellant's reputation for truth and veracity and honesty and fair dealing was bad, but who, after much urging, testified it was reasonably good. Counsel for appellant, on cross-examination, drew from the witness that he had based his opinion concerning appellant's reputation upon several incidents, among which were a "falling out" with a school-teacher, a cotton-weighing incident, a personal affray with a man named Coffman whom he whipped, and a report that he had set fire to a lumber yard, and also to the home of one Coffman. Appellant went into particulars or merits of most of the foregoing incidents, proving by the witness in reference to the "whipping" incident that appellant "gave Coffman a good thrashing." On redirect examination counsel for appellee asked the witness if it was not a fact "that Yeatts went up to Coffman with a brick or rock when Coffman was not looking, * * * when he was not expecting anything," to which the witness replied, "That is what Coffman said when he came out of the house," which answer counsel requested the court to strike out because it was improper to permit appellee "to go into the details of the difficulty." The lower court declined the request as stated. We incline to the opinion that none of the specific acts upon which the witness based his opinion was admissible, save, perhaps, as stated by the authorities cited, for the purpose of testing the knowledge and fairness of the impeaching witness. In the particular instance we are discussing the appellant alone had the right to exercise the privilege of inquiring into the matter he did inquire into, and, having gone into the merits of the specific acts upon which the witness based his opinion, we think he is not in a position to complain. It was, in effect, so ruled in Freedman v. Bonner, 40 S. W. 47.

The tenth assignment raises a similar question, and it is overruled for the reasons just stated.

Finding no reversible error in the record, the judgment is affirmed.

## On Rehearing.

[7] Counsel for appellant earnestly insists that we erred in our disposition of every issue raised on appeal and ignored the

most important thereof. We have carefully considered the motion for rehearing, and, while the record, as is often the case, presents some difficulties, we conclude our former disposition of the case should stand. We will, however, discuss the ninth assignment of error, erroneously designated as "tenth" in our opinion, which was overruled, because it raised, in our opinion, issues similar to those discussed in disposing of the eighth assignment. As will appear from our original opinion, appellee sought on direct examination to impeach appellant by its witness Morrison, but the witness finally testified that appellant's general reputation for truth and veracity and honesty and fair dealing was reasonably good. On cross-examination counsel for appellant drew from the witness the several incidents recited in our discussion of the eighth assignment, and upon which the witness based his opinion that appellant's general reputation was reasonably good. Among other questions asked was the following:

"There was one circumstance where he had a falling out with the teacher of the school? A. Yes; that was one."

Following such answer counsel for appellant also drew from the witness the admission that he based his opinion concerning appellant's general reputation upon four other separate and distinct incidents, inquiring into the details of some of them. On re-examination counsel for appellee interrogated the witness upon the incidents so introduced, and was permitted to propound to and receive from the witness the following question and answer, to wit:

"Now, the falling out there was something he had told—that he could have that woman meet him out at any time that he wanted to—some report that he had made reflecting on her character? A. Yes."

The objection made before the witness answered, and afterwards on motion to strike out, was that, while it was proper to prove the incidents forming the basis of the opinion, the details could not be gone into, for the reason that. it would necessitate the securing of other witnesses to prove justification of the acts disclosed, and because immaterial, irrelevant, hearsay, and self-serving. Following the objection the witness further testified that it had been three or four years since the incident occurred, and that the young lady was still teaching there. We held in our original opinion that appellant only had the right to examine the witness concerning the facts upon which he based his conclusion concerning the general reputation of appellant, and having chosen to do so, and having drawn from the witness the incident detailed, he was not in a position to complain of the court in permitting appellee to develop the particulars thereof. We then conceived, and do now, that such

was the ruling in Freedman v. Bonner, 40 S. W. 47. In that case it is said by this court:

"The defendants, on the original examination, only asked the witnesses Roberson and Gunn about the general reputation of McKinsey for truth and veracity in the neighborhood in which he lived or was best known; that the matters complained of were drawn out by plaintiffs' counsel; and that defendants' counsel only cross-examined the witnesses on the points thus drawn out. In such a case, while such matters were improper, and perhaps injurious, yet appellants have no ground of complaint."

[8] Aside from the fact that the error, if any, was initially introduced into the case by appellant, there is eminent authority for holding that such testimony was properly admitted. Mr. Jones, in his work on Evidence (section 864), declares it is the right of the one sought to be impeached to have the truth known, and for that reason he is entitled on cross-examination to demand of the witness fully the source of his information, and it was in the exercise of that right that counsel for appellant required Morrison to state the incident concerning the teacher. The same author on the same subject declares in section 871 that:

"After a witness has been cross-examined the next stage in the proceeding is his re-examination by the party calling him. The object of this examination is to allow the witness to explain or qualify his statements made in the cross-examination, and to give the details of transactions concerning which he has been cross-examined, but which, during such cross-examination, he had no opportunity to explain. The counsel has a right, upon such re-examination, to ask all questions which may be proper to draw forth an explanation of the sense and meaning of the expressions used by the witness on cross-examination, if they be in themselves doubtful, and also of the motive by which the witness was induced to use those expressions; but he has no right to go further and introduce matter, new in itself, and not suited to the purpose of explaining either the expressions or the motives of the witness.' Within its proper scope re-examination is a right, and not merely discretionary."

Thus, when appellant surrendered the witness to appellee, he had an admission from him that his opinion in part had been based upon a certain incident, and under the authority cited appellee was entitled to inquire into the details of that particular incident.

The motion for rehearing is overruled.