GALVESTON, H. & S. A. RY. CO. v. WHITE. (No. 1011.)

(Court of Civil Appeals of Texas. El Paso. Oct. 30, 1919. Rehearing Denied Nov. 20, 1919.)

1. EVIDENCE ⊚=474(3) — NONEXPERT TESTIMONY AS TO PHYSICAL CONDITIONS.

Testimony of witnesses, who knew plaintiff and saw him just before and just after his injury, being their personal observations of outward manifestations of condition, open to all who came in contact with him after his injury, *held* competent, as showing his condition at the time, and not open to objection of being speculative and the opinion of a nonexpert.

2. APPEAL AND ERROR ⊚=1060(1)—HARMLESS ERROR; COUNSEL'S ARGUMENT.

Remarks of plaintiff's counsel in argument, being in the verbiage of plaintiff, who as witness, without objection, explained why, after his injury, he sought work of others under an assumed name, even if objectionable, could not alone have influenced the jury.

3. TRIAL ⊚=121(1)—ARGUMENT OF COUNSEL COMMENT ON EVIDENCE.

There being evidence that though Dr. M., who testified that he found plaintiff uninjured, was first called in by plaintiff to attend him, continuance of his attendance was at request of R., defendant's surgeon, statement of plaintiff's counsel in argument that R. sent M. to see plaintiff was unobjectionable.

4. TRIAL ⊚=133(6)—INSTRUCTION TO DISREGARD ARGUMENT OF COUNSEL.

Reiterated statement in argument by plaintiff's counsel, without support in the evidence, that a doctor, who testified that there was nothing the matter with plaintiff, was a fake, *held* not prejudicial, the jury having been instructed to disregard it, and counsel having been twice fined for repeating it.

5. DAMAGES ⊚=208(2)—QUESTION FOR JURY AS TO INJURY AND RESULT.

Conflicting testimony *held* to make a question for the jury whether plaintiff's skull had been injured, causing pressure on the brain.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by Olan Washington White against the Galveston, Harrisburg & San Antonio Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, and Beall, Kemp & Nagle, of El Paso, for appellant.

M. W. Stanton, McKenzie & Loose, and Hudspeth & Harper, all of El Paso, for appellee.

WALTHALL, J. Appellee, Olan Washington White, brought this suit against appellant, Galveston, Harrisburg & San Antonio Railway Company, to recover damages for personal injuries alleged to have been sustained by him on account of negligence of the appellant, while working for appellant as a switchman in its yards at El Paso, Tex.

Appellee alleged that on July 28, 1917, while he was attempting to descend from one of appellant's box cars, the handhold or grab-iron, one of the appliances placed and used by appellant on the side of its box cars to assist in descending from the car, pulled off, or became detached from the side of the car, and that by reason thereof he was thrown down and received the injury of which he complained.

On the issues submitted the jury found in favor of appellee, and assessed his damages at $11,000, and judgment was so entered.

[1] Appellant's first and second assignments complain of the admission of the evidence of witnesses Ramsey and Jones. The objection made to the admission of the evidence of each of the witnesses is substantially that it is speculative merely, and the expression of the opinion of one who is not shown to be a physician or surgeon, or an expert on anatomy or physical condition.

Ramsey testified in part:

In 1917 he was working for the Southwestern. He knew White at that time. White went to work on the engine with him. Did not know where White lived when he first knew him. Visited White the following Sunday after White was injured. He then saw that White was bleeding at the left ear. He sat down alongside of the bed. Noticed nothing else about his head; noticed nothing that indicated his mental condition. His appearance was "like a man that was pretty badly hurt." Was acquainted with White before the accident and had occasion to observe his appearance. "Noticed lots of difference" in his appearance before the injury and afterwards. "He wasn't like a man that was at himself. I talked to

him very little. As to his appearance prior to his injuries with reference to strength and activity, his appearance was good; he was a large man, and his appearance as to health good. I have seen Mr. White since that time occasionally when I came in. As to his appearance now with reference to size and flesh as to what it was prior to his injuries, he is not at all the same man that he was when I first met him when he worked in the Southwestern." Met White once in· the summer of 1918 before he had the operation performed. "As to his physical appearance at that time, I thought he was very poor. As to what I meant by that, he had fallen away in weight, and he walked around like a man that was all in, I would judge. As to his appearance prior to his injuries with reference to whether he was an active man, slow or quick, he was active."

Jones testified that—

He became acquainted with White in 1907 in Wichita Falls; knew him there about three years. Did barber work for him during that time. Witness came to El Paso in 1916, and· saw White in El Paso in 1917. In Wichita Falls witness had occasion to observe White as to appearance in weight and physical condition; noticed "that he was a big, husky guy." In June, 1917, in El Paso, prior to his injuries, as to his physical condition, "he appeared to be in the same condition that he did when he lived at Wichita Falls. As to what he weighed when I first became acquainted with him, I figure he would weigh somewhere in the neighborhood of 165 pounds. I have seen him a number of times since the time he claimed to have received his injuries. As to his appearance now with reference to his physical condition, he doesn't appear to be the same man that he was before. He doesn't look to be as heavy as he was before. As to his movements and his general condition in regard to health, he doesn't move as brisk as he did before; he doesn't seem to have the energy that he did before."

We think the evidence of the witnesses is not subject to the objections offered. The witnesses each knew White and saw him just before and just after his injuries, and the evidence given is their personal observations of outward manifestations of condition open to all who came in contact with appellee subsequent to his injuries, and we think competent as showing White's physical condition at that time. Cunningham v. Neal, 49 Tex. Civ. App. 613, 109 S. W. 455, in which a writ of error was refused; Railway v. Brown, 30 Tex. Civ. App. 57, 69 S. W. 1010.

Appellant's third, fourth, fifth, and sixth assignments are directed to remarks of counsel made to and in the presence and hearing of the jury during, and as a part of, the argument to the jury. Appellant assigns the remarks as harmful and prejudicial error.

[2] One of appellee's attorneys in his argument, referring to appellee, said; "He is a man without means and with a family." Again, same counsel, referring to appellee, said:

"It appears from the uncontroverted evidence in this case, gentlemen of the jury, that he was working because he had to. I tell you, necessity knows no law. The man worked because he had to. We all have to work because we have to. We have to earn a living. We have to do it in some way and do it honestly."

It might be observed here that no issue was made in the case as to whether appellee was a man with or without means, nor was it an issue in the case that appellee was working because he had to. It is claimed by appellee that the remarks were rendered proper by reason of certain evidence introduced by appellant. On cross-examination of appellee he stated that he signed a name other than his own to an application for employment, and on redirect examination, in explanation why he did so sign the application, he said:

"When a fellow is having litigation with a railroad company he can't get work. I have to support my wife and baby and that is the only means I had to get employment was to work under an assumed name. * * * I have no means or resource to support my wife, baby, and myself. * * * I had no means of support, and I followed this railroad work practically all my life, and I had no other way of making a living for my family, and that is the reason that I made these false statements in the application, in order to get employment."

The question as to the admissibility of the evidence offered, as to the application or the statements contained therein as primary or original evidence, is not before us; nor is the above-quoted evidence of appellee in explanation thereof. It seems to us, however, conceding, for the purpose of the assignments only, .that the application for employment, with its false statements therein, and the evidence of appellee in explanation thereof, were properly before the court (which we do not decide and by no means concede), and raised issues of fact to go before and to be considered by the jury, the remarks of counsel complained of are well within the proof. It seems to us from the record presented here that, if appellant is in a position to complain of the above remarks of counsel, the language used by counsel is in the verbiage of the witness; the jury had heard, without objection, the evidence of the facts referred to in the remarks made, and we cannot think that the remarks alone, if objectionable, could have influenced the verdict.

[3] It is also insisted that harmful and prejudicial error was committed by counsel for appellee in stating in argument to the jury that "Dr. Ramey sent him to see plaintiff," and that "Dr. Moore was a fake doctor." The first remark referring to Dr. Moore, and meaning and referring to the fact that Dr. Moore had called to see appellee immediately after appellee had been injured, and that Dr. Ramey had sent him. The undisputed evidence was that on the night of the accident causing the injuries to appellee Dr. Moore

called to see appellee on telephone call from appellee's wife. In his deposition Dr. Moore testified that he had examined appellee from his head to his toes, both on the next morning after the accident and thereafter, and found absolutely nothing the matter with appellee, and so reported to Dr. Ramey, local surgeon for appellant. Dr. Moore further stated that appellant "paid me $25.00 for my services to the plaintiff. I didn't want to treat the plaintiff. I saw there was nothing the matter with him, and didn't think he would ever pay me. I wanted to quit, but Dr. Ramey told me to continue to look after him and I would get paid." Dr. Moore made an extended statement as to the several examinations he made of appellee, stating that he found absolutely nothing in the way of injury. The court refused to instruct the jury not to consider the remark of counsel. It seems to us that both parties were more or less responsible for the attendance of Dr. Moore upon appellee. Appellee first called him, and both were responsible for his continued service. We think the trial court was not in error in leaving the matter of Dr. Moore's attendance upon appellee to the jury to determine, if it was an issue of fact to be determined at all. The jury found, contrary to Dr. Moore's evidence, that appellee was injured; but the finding has support in the evidence, on grounds other than influence of the remark of counsel.

[4] It is also insisted that prejudicial and harmful error was committed by appellee's counsel in his closing argument to the jury in which he stated that Dr. Moore was "a fake doctor." The court promptly instructed the jury to disregard the statement of counsel, and said to counsel: "You will not express that opinion any more, sir." To which counsel repled: "That is my opinion; I am going to express my opinion before this jury. That is my judgment; I think I am warranted in stating it." The court replied to counsel: "You will obey the rules of the court. I will fine you $25, sir." Counsel then, in the hearing of the jury, retorted: "That's all right, sir; I will pay it, but I think the evidence shows that he was a fake doctor." Whereupon the court stated: "All right, sir; I fine you $50."

It is the insistence here that where the undisputed evidence shows that appellee's wife first called in Dr. Moore, and where the character and reputation of Dr. Moore were not assailed, and no evidence offered in any way reflecting upon his reputation or standing as a physician or surgeon, it was harmful and prejudicial error for counsel to state, and to insist upon stating, to the jury as above, that Dr. Moore is a fake doctor. The question as to whether Dr. Moore was or was not a fake doctor was not an issue in the cases, was not raised by the evidence or argument of opposing counsel, and it seems to us the remark was a clear violation of rule 39, applying to arguments of counsel on the facts in trial courts. True, while Dr. Moore was not a party to the suit, he was an important witness for appellant, having personally examined appellee and testified to the result of his examination. The question then is presented: Was appellant prejudiced by the remark? The remark did not involve the statement of any fact, nor did the evidence in the case carry even a damaging suspicion of the truth of the opinion expressed, but was only the expression of an opinion of the attorney. The remark does not seem to us calculated to inflame the minds of the jury or create a prejudice against appellant. Had the remark met with the approval of the court, or had not been vigorously excluded, and the attorney repremanded by the court, it might have appeared to the jury that the court was at least in sympathy with the expression used; but the court promptly excluded the remark from the consideration of the jury, and held counsel in contempt of the court's ruling for its repetition, and punished him by a fine. We have considered this assignment in connection with the seventh, and have concluded that it was error for counsel to make the remarks complained of, but that the remarks made by counsel did not prejudice the appellant.

[5] The seventh assignment complains of the verdict and judgment as being excessive. In order to justify the amount of the verdict, the jury must have believed that the preponderance of the evidence on the issue of the extent of appellee's injuries was on the side of appellee. It would extend the opinion to too great length to even give a synopsis of all the evidence on that issue. Appellee testified to having received the injuries complained of, and to having suffered intense pain in his head before the operation made about a year thereafter, and extreme pain and suffering in other parts of his body, and reduction in size and weight, was in bed some 22 days, unable to walk, subsequently was operated on by trephining the top of his head for a fracture of the skull. Four physicians assisted in the operation. Three of the physicians testified to a fracture of the skull. Dr. Paul Rigney, a graduate of Tulane Medical College, performed the operation, and testified that "the external evidences were a depression and adhesion of the scalp to the skull, together with what we regard as a cicatrice, which is a thickened area at the point of the injury, thickened area of the scalp where it has adhered. That was very apparent even to look at it from a point almost anywhere in the room, and also by feeling it we could determine the attachment of the scalp and also the depression of the skull—the attachment to the skull. * * * In my opinion this depression that I found there in the skull was producing pressure on the brain." Dr. Rigney further testified that in his opinion appellee, because of impaired endurance, would

never be able to do any class of work involving the operation of trains, or any type of manual labor requiring long hours. Dr. John A. Hardy testified to substantially the same as did Dr. Rigney, as to the abnormal depression and adhesion of the scalp to the skull, and the fracture of the external place of the skull. We have quoted portions of the evidence of other witnesses as to appellee's general condition and appearance before and after the accident causing the injuries. True, quite an array of surgeons, eminent in surgery, examined the portion of skull removed in the operation, and expressed the opinion that the portion of the skull examined did not disclose a fracture; but that was an issue of fact for the jury, and the jury found generally for appellee, and assessed the damages stated. The verdict has support in the evidence. We cannot say that the verdict and judgment is excessive.

Finding no reversible error, the case is affirmed.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes