## HOOVER v. McFARLAND.
### No. 3825.

Court of Civil Appeals of Texas. Texarkana.
Jan. 23, 1930.

Rehearing Denied Feb. 6, 1930.

W. F. Moore, of Paris, for appellant.

Sturgeon, Birmingham & Sturgeon, of Paris, for appellee.

WILLSON, C. J. (after stating the case as above).

■ Appellant complains because the trial court, over his objection thereto on the ground that it was leading and called for the conclusion of the witness, permitted appellee while testifying in her own behalf to answer (in the affirmative) a question propounded to her by one of her attorneys as follows: "Has your husband and you all been in possession of the particular piece of land between Tollett' Creek and the ravine ever since your husband bought it?" It is not clear under the rule applicable (International & G. N. Railway Co. v. Dalwigh, 92 Tex. 655, 51 S. W. 500; Louisiana & Texas Lumber Co. v. Lumber Co. (Tex. Civ. App.) 171 S. W. 537; American Ry. Express Co. v. Truede (Tex. Civ. App.) 246 S. W. 1088; Williams v. Craig (Tex. Civ. App.) 252 S. W. 876) that the question was subject to the objection urged to it, but if it was, and it was error to permit the witness to answer it, we think the error should be treated as harmless. The question was about an immaterial matter, but it was not objected to on that ground. The controversy between the parties was not about land "between Tollett's Creek and the ravine" bought by appellee's husband, but was about land he never bought and which appellee was claiming to own (not by purchase but) by force of the statute of limitations.

■ It appears from a bill of exceptions in the record that after Edgar Barnett, a witness for appellee, had testified he knew the location of appellee's 46½-acre tract, knew where Tollett's creek was, knew there was a road on the north side of appellee's land and that "there used to be a road on the south side" thereof, he was asked by appellee questions as follows: (1) "State to the jury whether or not the McFarlands worked all the land between those two roads?" (2) "State whether or not they worked all the land between the ravine and creek from the road on the north to the road on the south?" The answer of the witness to the questions was: "Yes, sir, they worked it." Appellant objected to the questions on the ground that they "were leading and suggestive," and complains here because the court overruled the objection and permitted the witness to answer as he did. The contention is overruled. As we view them, the questions were not objectionable on the ground specified. Lott v. King, 79 Tex. 292, 15 S. W. 231, 233. In the case cited the question objected to was: "If you state that you were acquainted with Barnes Parker, now please state whether or not you ever sold and conveyed the headright certificate of John B. Bulrose for one league and one labor of land to said Barnes Parker?" In overruling a contention that the question was leading and suggestive, the Supreme Court said: "It [the question] does not properly admit of an answer 'yes' or 'no;' and we are not aware of any decision which holds that a question is leading merely because it is put in the form 'did or did not.' Whether a question in that or a similar form be leading or not depends upon the determination of the inquiry whether it suggests any particular answer; and we think questions in that form which have been held leading are not such as inquire into a single fact, but such as enable the witness to state in two words, such as 'he did' or 'he did not,' a series or group of facts." And see Galveston, H. & S. A. Railway Co. v. Puente, 30 Tex. Civ. App. 246, 70 S. W. 362; St. Louis Southwestern Railway Co. v. Lowe (Tex. Civ. App.) 97 S. W. 1087; Cunningham v. Neal, 49 Tex. Civ. App. 613, 109 S. W. 455; Bryan Press Co. v. Railway Co. (Tex. Civ. App.) 110 S. W. 99; Louisiana & Texas Lumber Co. v. Lumber Co. (Tex. Civ. App.) 171 S. W. 537; Southern Traction Co. v. Coley (Tex. Civ. App.) 211 S. W. 265.

■ Appellant insists the evidence did not warrant a finding that appellee, by her own and her deceased husband's possession and use of the fraction of an acre in controversy, had acquired title thereto by force of the statute of limitation of ten years, and urges that the trial court therefore erred when he refused the request that he instruct the jury to return

a verdict in his (appellant's) favor, and when he submitted to the jury issues as to such possession and use.

It will be noted on referring to the statement above, that the jury found facts showing that appellee by force of said statute had acquired a right to said fraction of an acre prior to 1919, when the 42½-acre tract of which it formed a part was conveyed to appellant as well as prior to July 30, 1925, when the suit was commenced. There was evidence that part of said 42½-acre tract was cultivated and used by appellant's vendors, but none that they ever had actual possession or made any use of the fraction of an acre thereof in controversy. The evidence as to appellee's possession and use, and that of her deceased husband, of the fraction of an acre was mainly as follows: Edgar Barnett testified that his mother owned the 42½-acre tract before it was conveyed to appellant and that he (the witness) worked part of same during the eight years (from 1911 to 1919) she owned it. He testified further: "The McFarlands (referring to appellee, her deceased husband and their sons Abbie and Larkin) worked the land between the ravine and the creek from the road on the north to the road on the south." The fraction of an acre in question was between the ravine and creek and roads the witness referred to. Hence, we think the jury had a right to conclude from the testimony set out that the McFarlands "worked" the land in controversy for the eight years from 1911 to 1919. Abbie McFarland testified: "I worked my mother's place for eight years (from 1914 to 1922), that is, I was my own boss that long. I was raised on the place until I was 22. The eight years I worked on the place as my own boss was previous to 1922, just before 1922. I also worked on the place before that time with my father. I think I commenced working with my father when I was 7 years old. * * * I know where Tollett's creek is with reference to my mother's land and I know where the ravine on the east side is. * * * At the time I worked it I cultivated the land between those two roads, from the north road to the south road," in cotton and sorghum. He testified further: "I said I had been working the place since I was 7 years old. I am 33 now. I left there in 1922." Larkin McFarland testified that before his brother Abbie worked the land his father cultivated it. "I know," he said, "that he cultivated this particular piece of land in controversy." And Barnett testified that since 1913 he lived on land adjoining appellant's on the north. "I know where Tollett's Creek is," he said. "There is a ditch or ravine between Mrs. McFarland's land and Mr. Hoover's land. I know where the ravine connects with Tollett's Creek. From my own knowledge since I have been out there I know that Mrs. McFarland's boys cultivated her land up to last year. Her husband J. C. McFarland cultivated it during his lifetime. Mrs. McFarland's husband and her boys have worked all the land, cultivated all the land that lies between Tollett's Creek and the ravine." Appellee, as a witness, testified that her land was bounded by Tollett's creek on the west side and by a ditch or ravine on the east side, and added: "The ditch I spoke of as being my east boundary line runs between my land and the plaintiff's land." "My husband," she said, "used the land and worked it during his lifetime and the boys have worked it since he died. * * * They all worked the land between Tollett's Creek and the ravine east of the creek. Cotton was raised on this particular piece of land all those years. * * * My husband and myself have been in possession of the piece of land between Tollett's Creek and the ravine ever since he bought it. Since the institution of this suit this land has been standing there. Before that my son Larkin worked it for 3 years, Abbie worked it for 8 years, and before that my husband worked it, beginning in 1900."

Having in mind rules of law, invoked by appellant and recognized in cases he cites (Collier v. Couts, 92 Tex. 234, 47 S. W. 525; Satterwhite v. Rosser, 61 Tex. 166; Evitts v. Roth, 61 Tex. 81) we nevertheless think it should not be said that the evidence we have referred to did not warrant the findings made. The jury had a right to believe that evidence, and, believing it, had a right to conclude therefrom, we think, that the McFarlands claimed the fraction of an acre as their own, had actual possession thereof, and cultivated, used, and enjoyed it continuously (2 Tex. Jur. 86) for a period of more than ten years before appellant bought it in 1919, as well as for such a period before the suit was commenced. We think the jury had a right to conclude from the testimony of appellee and her sons as a whole that they had always regarded the fraction of an acre in controversy as a part of the 46½-acre tract appellee's husband purchased in 1900, and to treat the fact that they did as sufficiently explaining apparent discrepancies in said testimony as to the identity of the land they had in mind—that is, as to whether they were testifying about the land in controversy as a part of said 46½-acre tract or as separate and apart from it.

The judgment is affirmed.